

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00144-CV

———————————————

IN RE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Relator

---

Original Proceeding
153rd District Court of Tarrant County, Texas
Trial Court No. 153-306745-19

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Opinion by Justice Birdwell

**OPINION**

We address in this original proceeding a facially unremarkable discovery dispute which nevertheless has revealed an apparent conflict in this state's jurisprudence concerning when and the manner in which a cause of action for uninsured/underinsured motorist benefits accrues or ripens. The conflict arises due to the unique incorporation of the elements of a negligence cause of action against the uninsured or underinsured motorist into the contractual terms of the UM/UIM coverage provided by the standard automobile liability policy. And the two lines of precedent with which the district court grappled treat an insurer's obligation to pay covered benefits as determined by either (1) the *contractual* handling and adjustment[1] of a claim by the insurer, independent of and without resort to the filing and successful prosecution of a lawsuit by the insured to a binding judgment against the insurer, or (2) the *judicial* handling and adjustment of a claim through the filing and successful prosecution of a lawsuit by the insured to a judgment binding upon the insurer.

The first line of precedent flows from the recognition of the common law duty of good faith and fair dealing in the UM/UIM context. In 1987, in *Arnold v. National County Mutual Fire Insurance*, the Supreme Court of Texas held that a common law cause

---

[1]"Insurance claims adjustment or claims processing [means a]ny activities to supervise, handle, investigate, pay, settle, or adjust claims or losses." 34 Tex. Admin. Code § 3.355(a)(8) (2019) (Comptroller of Pub. Accounts, Ins. Servs.); *see Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988) ("The business of insurance includes the investigation and adjustment of claims and losses.").

of action for an insurer's breach of its duty of good faith and fair dealing accrues when the insured under a standard automobile liability policy providing UM coverage obtains a binding judgment against the insurer for benefits, the payment of which the insurer had no reasonable basis to deny or delay. 725 S.W.2d 165, 166–67 (Tex. 1987). In so holding, the *Arnold* court employed an accrual analysis that clearly contemplated a contractual obligation to pay a claim for UM benefits without the insured having to file and successfully prosecute a direct action to obtain a binding judgment for benefits against the insurer. *See id.*

Moreover, in 1990, in *Murray v. San Jacinto Agency*, the supreme court modified *Arnold* to hold that an insurer's common law cause of action for an insurer's breach of its duty of good faith and fair dealing accrues on the date the insurer denies the UM/UIM claim, not the date of the final resolution of the underlying direct action. 800 S.W.2d 826, 828–29 (Tex. 1990). Consistent with *Arnold*, the accrual analysis in *Murray* clearly contemplated a contractual obligation to pay such a claim without the insured having to file and successfully prosecute a direct action to a binding judgment for benefits against the insurer. *See id.*

The second line of precedent flows from a presentment analysis that generally forecloses the recovery of attorney's fees in direct actions for UM/UIM benefits. In 2006, in *Brainard v. Trinity Universal Insurance*, the supreme court held, without reference to either *Arnold* or *Murray*, that, because an insurer is under no contractual duty to pay benefits under a standard automobile liability policy providing UIM coverage unless

3

and until the insured obtains a judgment for such benefits that the insurer is thereby bound to pay, presentment of the claim requires the rendition of such a judgment. 216 S.W.3d 809, 818–19 (Tex. 2006); *see also State Farm Mut. Auto. Ins. v. Nickerson*, 216 S.W.3d 823, 824 (Tex. 2006); *State Farm Mut. Auto. Ins. v. Norris*, 216 S.W.3d 819, 822–23 (Tex. 2006). In so holding, the presentment analysis in *Brainard* contemplated the insured filing and successfully prosecuting a direct action to a binding judgment against the insurer *as a condition precedent* to contractual liability for UIM benefits.[2] *See* 216 S.W.3d at 818–19.

The apparent conflict between *Arnold*, as modified by *Murray*, and *Brainard*, is thereby unmistakable. *Brainard* contemplates the accrual of an obligation to pay a claim for UM/UIM benefits only after the *judicial* handling and adjustment of a UM/UIM claim by direct action, with the insurer contesting coverage through the exhaustion of all appeals without any extracontractual liability exposure.[3] *Arnold*, as modified by *Murray*, contemplates the accrual of an obligation to pay UM/UIM benefits from the insurer's *contractual* handling and adjustment of the claim and holds that forcing an

---

[2]*Brainard* also recognized a duty to pay without resort to litigation if imposed by an agreement between insurer and insured separate and distinct from the terms of the underlying policy. *See* 216 S.W.3d at 818–19. Since the record in this proceeding reveals no such agreement, our analysis will address only the binding judgment requirement.

[3]*See Mid-Century Ins. Co. of Tex. v. Boyte*, 80 S.W.3d 546, 548–49 (Tex. 2002) (holding that insurer has a right to appeal a judgment for UIM benefits without implicating any extracontractual liability).

4

insured to prosecute a direct action for benefits when the insurer's liability is reasonably clear constitutes a breach of its duty of good faith and fair dealing.[4]

Having already paid a binding "policy limits" judgment for UIM benefits to its insured, Real Party in Interest, Paula C. Mentzer, at the conclusion of her direct action in the county court at law, Relator, State Farm Mutual Automobile Insurance Company seeks mandamus relief from discovery propounded by Mentzer in support of common law bad faith and statutory extracontractual liability causes of action she brought subsequently and separately in the district court on the grounds that *Brainard*, as a matter of law, forecloses the accrual or ripening of any and all such causes of action arising from the handling and adjustment of her claim for UIM benefits, and thereby renders such discovery both irrelevant and unlikely to lead to the discovery of admissible evidence. Because *Brainard* did not expressly overrule either *Arnold* or *Murray* and thereby foreclose the accrual or ripening of the common law bad faith cause of action asserted by Mentzer due to State Farm's alleged contractual mishandling and maladjustment of her claim, we are bound by the doctrine of stare decisis to hold that the district court did not abuse its discretion by following the precedent of *Arnold*, as

---

[4]*See Universe Life Ins. v. Giles*, 950 S.W.2d 48, 55–56 (Tex. 1997) (modifying *Arnold* to adopt statutory "reasonably clear" standard for common law bad faith cause of action); *see also Boyte*, 80 S.W.3d at 549 (recognizing "statutory standard is identical to the common-law bad faith standard"); *Carter v. State Farm Mut. Auto. Ins.*, 33 S.W.3d 369, 372 (Tex. App.—Fort Worth 2000, no pet.) (applying "reasonably clear" standard in UM/UIM context).

5

modified by *Murray*, in entering an order compelling such discovery, and we accordingly deny the mandamus relief requested.[5]

## I. Factual and Procedural Background

On or about February 20, 2016, the car in which Mentzer was riding as a front seat passenger was involved in a motor vehicle accident with a pickup truck driven by Robert Rodriguez. Mentzer suffered serious physical injuries as a result of the accident.

On January 2, 2018, Mentzer filed a direct action against State Farm in County Court at Law No. 2 of Tarrant County seeking a judgment for UIM benefits and alleging the negligence of Rodriquez proximately caused her personal injuries in excess of his automobile liability coverage. Along with her original petition, Mentzer served written discovery in the form of requests for disclosure, requests for production, interrogatories, and requests for admissions. As part of her written discovery, Mentzer requested production of true and correct copies of her State Farm policy and the entirety of State Farm's claim file, as well as copies of all non-privileged email messages, written communications, records, or materials regarding Mentzer in State Farm's possession. Mentzer also sought production of any and all policy and procedure manuals for the training of State Farm adjusters in effect before the accident, and copies

---

[5]We need not address the statutory extracontractual liability causes of action asserted by Mentzer because all of her discovery requests address State Farm's alleged mishandling and maladjustment of her UIM claim, from which arise both her common law bad faith cause of action and her statutory extracontractual liability cause of action. If her discovery requests are permissible in support of the former, they are equally permissible in support of the latter.

of any and all work papers or other documentation "used for the purpose of estimating, calculating[,] or formulating opinions regarding contingent liabilities" related to Mentzer's direct action.

Beginning January 14, 2019, the county court at law conducted a trial of Mentzer's direct action for UIM benefits. Shortly before trial, the parties agreed to the following evidentiary stipulations: (1) the State Farm policy made the basis of Mentzer's direct action for UIM benefits was in full force and effect at the time of the underlying motor vehicle accident involving the vehicle driven by Rodriguez; (2) Mentzer was a "covered person" under the policy at the time of the accident; (3) the policy limits for UM/UIM coverage payable by State Farm at the time of the accident was $30,000; (4) the vehicle driven by Rodriguez was an "underinsured motor vehicle" as defined by the State Farm policy at the time of the accident; (5) Rodriguez was covered by a standard automobile liability policy at the time of the accident with policy limits of $50,055, which had previously been tendered to Mentzer; and (6) the State Farm policy provided UIM coverage for past and future damages at the time of the accident, including (a) physical pain and suffering, (b) mental pain and suffering, (c) physical impairment, (d) medical care expenses, and (e) lost wages. During the trial, on the record and before the verdict, counsel for State Farm further stipulated that Mentzer incurred past medical expenses in the amount of $24,909.60 and past lost wages in the amount of $6,631.20.

After the conclusion of the evidence on January 16, 2019, the county court at law submitted a charge to the jury asking the following question: "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Paula Mentzer for her injuries, if any, that were proximately caused by the occurrence in question?" The jury shortly thereafter returned a unanimous verdict for $157,550 in total damages, broken down for the following elements submitted: $42,000 (past physical pain and suffering); $17,500 (future physical pain and suffering); $27,300 (past mental anguish); $17,200 (future mental anguish); $34,650 (past physical impairment); and $18,900 (future physical impairment). When combined with the amounts stipulated for past medical expenses and past lost wages, the total amount of damages sustained by Mentzer as a result of the accident was $189,090.80.

On March 13, 2019, before entry of a final judgment in the county court at law, Mentzer filed a second lawsuit against State Farm in the 153rd District Court of Tarrant County asserting causes of action for breach of the common law duty of good faith and fair dealing, breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act. On April 15, 2019, Mentzer served State Farm with her original petition by certified mail, including service of written discovery in the form of requests for disclosure, requests for production, interrogatories, and requests for admissions.

Although some of the written discovery overlapped with the written discovery served in the county court at law, most sought information and documentation specific

to State Farm's adjustment of Mentzer's claim for UIM benefits. For example, Mentzer sought production of all documents showing a valuation or basis for valuation sent to or from any adjuster or adjusters handling the file for State Farm in the county court at law litigation. She also sought the production of all documents, electronic files, or reports generated regarding her claim after her sworn deposition in the county court at law litigation.

Interrogatories specifically inquired into how and whether the claim that Rodriguez was drinking alcohol at the time of the accident and had fled the scene of the accident affected the valuation of Mentzer's UIM claim. Another interrogatory asked specifically how Mentzer's claim for UIM benefits had been evaluated for damages by State Farm. Still other interrogatories asked for the specific reason State Farm did not offer Mentzer its full policy limits prior to trial in the county court at law and, if State Farm believed any of her claims in that litigation were doubtful, why it so believed. Finally, among others, Mentzer requested that State Farm admit or deny that it refused to offer the policy limits applicable to the county court at law litigation "because regardless of the outcome of trial, [it] believed it would only have to pay the applicable policy limits."

On May 3, 2019, State Farm filed a general denial and demand for a jury trial in the district court.

On May 30, 2019, based upon the stipulations of the parties and the verdict of the jury, and crediting all prior payments made to Mentzer on behalf of Rodriguez, the

9

county court at law entered a final judgment against State Farm for policy limits of $30,000 plus post-judgment interest and costs of court. State Farm tendered payment of the judgment on June 6, 2019. Mentzer executed a Satisfaction and Release of Judgment acknowledging payment of the county court at law's judgment on July 22, 2019, but expressly denied that the payment in any way resolved the extracontractual liability claims asserted in the district court litigation.

Meanwhile, on June 18, 2019, State Farm filed a motion for protection in the district court arguing that the written discovery served therein by Mentzer was "premature" and unduly burdensome and expensive. After recounting the factual and procedural background of Mentzer's UIM claim in the county court at law, including its payment of the final judgment, State Farm urged the district court to disallow or stay all discovery until State Farm had an opportunity to establish its payment of the final judgment in the county court at law as foreclosing, as a matter of law, the accrual or ripening of the common law bad faith and statutory extracontractual liability causes of action asserted by Mentzer:

> In the instant case, the benefits of allowing this discovery to go forward at this time are nonexistent. As stated earlier, because State Farm timely paid the judgment in the [county court at law], State Farm has satisfied its obligations to Mentzer, her breach of contract and extra-contractual causes of action will not accrue or become ripe, and having to respond to the written discovery requests or conduct any additional discovery will have been a waste of time and resources. At the very least, the discovery should be stayed until State Farm has had an opportunity to file and present its summary judgment motion to the Court, as the discovery will not be necessary for the Court to decide the legal issue of whether payment of the . . . Final Judgment in the [county court at law]

10

will eliminate the need to litigate the instant case. No prejudice will come to Plaintiff since the written discovery can be obtained at a later time if State Farm is denied the relief it will seek by way of a motion for summary judgment after the payment of the Final Judgment.

On July 1, 2019, State Farm filed a traditional motion for summary judgment asserting that its timely payment of the final judgment entered in the county court at law barred the breach of contract and the extracontractual liability causes of action, both common law and statutory, alleged by Mentzer. More specifically, and relying on *Brainard* and its progeny, State Farm argued that, until the entry of the final judgment by the county court at law, its liability for Mentzer's UIM claim was not reasonably clear and that it had a reasonable basis for delaying payment of her claim until after the entry of the final judgment. On January 28, 2020, State Farm filed an amended traditional motion urging identical grounds for summary judgment.

On March 24, 2020, the district court entered a scheduling order setting the amended traditional motion for hearing on April 23, 2020, with deadlines for responses and objections by the parties.

On April 13, 2020, Mentzer timely filed a response to both State Farm's amended traditional motion and its motion for protection, including a motion to compel, arguing that, separate and distinct from its contractual duties, State Farm owed common law and statutory duties not to deny or delay payment on Mentzer's UIM claim when its liability was reasonably clear without the necessity of either a trial or a judgment in the county court at law, and that State Farm breached those duties by delaying payment of

11

policy limits previously demanded by Mentzer on November 2, 2017, until after the entry of the final judgment. More specifically, as evidence of this distinct duty, Mentzer quoted Section 542.003(5) of the Texas Insurance Code, which specifically defines an unfair claims settlement practice to include "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder." Moreover, Mentzer distinguished *Brainard* on the basis that it did not expressly foreclose extracontractual liability through payment of a judgment for UIM benefits, as urged by State Farm, and further argued that her extracontractual liability causes of action had both accrued and ripened before the rendition of the judgment so paid, citing state and federal authorities in support thereof, including *Arnold.*

On April 15, 2020, Mentzer filed a verified motion to continue the hearing on State Farm's amended traditional motion for summary judgment because State Farm had yet to respond to any of the written discovery she sought under cover of its motion for protection and because she needed to obtain such discovery in order to respond to State Farm's amended traditional motion for summary judgment. On April 16, 2020, Mentzer filed a virtually identical amended response, but added a more specific citation to *Arnold* observing it to have been "a UIM bad faith case [holding] that the insured produced sufficient summary judgment evidence to raise material fact issues about whether the insurer lacked a reasonable basis for refusing to pay the insured's claim and

that, despite the insurer's actual knowledge of that fact, it forced the insured to a trial before the insurer would pay the claim."

On April 16, 2020, Mentzer filed her First Amended Petition in the district court, maintaining her causes of action for breach of the common law duty of good faith and fair dealing and violations of the Texas Insurance Code, but withdrawing her cause of action for breach of contract. Attached to the amended pleading, she included written discovery identical to that served with her original petition.

On April 20, 2020, State Farm responded to Mentzer's motion for continuance by urging its denial because she failed to identify any discovery that would address the legal issues presented by its amended traditional motion. On the same date, State Farm filed a reply in support of its amended traditional motion, arguing that the federal authorities upon which Mentzer relied antedated the decision in *Brainard* and that to the extent any state authority relied upon them, they too were inapposite. State Farm's reply completely ignored Mentzer's reference to *Arnold*.

On April 23, 2020, the district court entered an order granting Mentzer's motion for continuance.

On May 4, 2020, State Farm filed a reply in support of its motion for protection and in response to Mentzer's motion to compel, arguing that, because its payment of the final judgment in the county court at law was an undisputed fact and its amended traditional motion for summary judgment demonstrated that, as a matter of law, its payment foreclosed the accrual or ripening of any of Mentzer's extracontractual liability

13

causes of action, the written discovery she sought was irrelevant and a waste of time and resources.

On May 8, 2020, the district court entered an order compelling State Farm to respond to Mentzer's written discovery requests. Although the order did not address State Farm's motion for protection, it effectively denied the relief sought therein.

State Farm immediately sought mandamus relief and an emergency stay pending resolution of the issues presented by its petition. We stayed the district court's order to permit our consideration of State Farm's petition.

## II. Standard of Review

Mandamus is both an extraordinary remedy and a discretionary one. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding). This court may grant mandamus relief from a discovery order only when (1) the trial court's decision is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law and (2) the relator has no adequate remedy by appeal. *In re State Farm Lloyds*, No. 02-20-00163-CV, 2020 WL 5242414, at *2 (Tex. App.—Fort Worth Sept. 3, 2020, orig. proceeding [mand. pending]) (mem. op.) (citing *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding)).

In determining whether the trial court abused its discretion, we may not substitute our judgment for the trial court's determination of factual or other discretionary matters. *Id.* But because a trial court has no discretion in determining what the law is or in applying the law, even when the law is unsettled, we review its decisions

on questions of law and application-of-law-to-facts questions much less deferentially. *Id.* A trial court abuses its discretion by clearly failing to correctly analyze or apply the law. *Id.*

The scope of discovery is generally within the trial court's discretion so long as a discovery order does not exceed what the rules of civil procedure permit. *See* Tex. R. Civ. P. 192.4; *State Farm Lloyds*, 520 S.W.3d at 604; *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). To be discoverable, evidence must be relevant and nonprivileged, but it need not be admissible if it is reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a); *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding). Thus, although the permissible scope of discovery is generally broad, a discovery request "must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *Nat'l Lloyds Ins.*, 532 S.W.3d at 808 (quoting *CSX Corp.*, 124 S.W.3d at 152).

Even when a trial court abuses its discretion in making a discovery ruling, we will not intervene if the relator has an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Appeal is inadequate when a discovery order compels production "beyond the rules of [civil] procedure." *In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding)).

### III. Scope of Discovery in Direct Actions for UM/UIM Benefits

UM/UIM coverage provides policy benefits to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury or property damage. *See* Tex. Ins. Code Ann. §§ 1952.105–.108. To recover UM/UIM benefits under a standard automobile liability policy, an insured must show (1) that her policy included UM/UIM coverage, (2) that the uninsured or underinsured motorist negligently caused the motor vehicle accident that resulted in the covered damages, (3) the amount of her covered damages, and (4) that the UM/UIM automobile liability coverage is either non-existent or deficient for purposes of compensating her covered damages. *See In re Liberty Cty. Mut. Ins.*, 537 S.W.3d 214, 220 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding). Because a claim for UM/UIM benefits uniquely incorporates the liability and damages elements of the negligence cause of action against the uninsured or underinsured motorist, and because there is ordinarily no jury question as to whether the policy covers either the insured or the vehicle in the event of a verdict of liability and damages sufficient to invoke coverage, the liability and damages questions submitted in a direct action against the insurer are identical to those that would be submitted in the negligence cause of action against the uninsured or underinsured motorist. *See id.* (recognizing UM/UIM policy "is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party"); *Blevins v. State Farm Mut. Auto. Ins.*, No. 02-17-00276-CV, 2018 WL

5993445, at *14 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.) ("It is only after an insured has obtained findings that the other motorist was negligent (or more negligent than the insured) and that he sustained damages that the trial court needs to take up the UIM issue.").

As a result, the scope of permissible discovery in a direct action for UM/UIM benefits differs significantly from other insurance disputes. *In re Liberty Cty. Mut. Ins.*, 606 S.W.3d 866, 872 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (stating that unlike most first-party claims in which policy terms control coverage, UM/UIM coverage hinges on tort liability of other motorist); *In re Liberty Cty. Mut. Ins.*, 557 S.W.3d 851, 855–56 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (same); *In re State Farm Mut. Auto. Ins.*, 553 S.W.3d 557, 564–65 (Tex. App.—San Antonio 2018, orig. proceeding) (same); *Liberty Cty. Mut. Ins.*, 537 S.W.3d at 220 (same). The only discovery permissible in a direct action is that reasonably calculated to lead to the discovery of evidence admissible in the underlying negligence cause of action; information concerning the insurer's handling or adjustment of the claim is not generally discoverable. *Compare In re Garrison Prop. & Cas. Ins.*, No. 12-20-00190-CV, 2020 WL 6164982, at *4–6 (Tex. App.—Tyler Oct. 21, 2020, orig. proceeding) (mem. op.) (granting mandamus relief from order compelling deposition of insurer's corporate representative concerning claims handling and extracontractual liability, but denying relief concerning insured's damages and any defenses asserted by insurer); *In re Germania Select Ins.*, No. 11-20-00176-CV, 2020 WL 5741595, at *2–4 (Tex. App.—Eastland

17

Sept. 25, 2020, orig. proceeding) (mem. op.) (granting mandamus relief from ruling permitting deposition of insurer's corporate representative because relevant only to potentially moot extracontractual liability causes of action); *Liberty Cty. Mut. Ins.*, 557 S.W.3d at 854–56 (granting mandamus relief from order compelling deposition of insurer's corporate representative because topics were not limited to other driver's liability and to existence and amount of insured's damages and because insurer had demonstrated that its representative had no personal knowledge of the underlying accident and that information concerning liability and damages was readily available from more convenient, less burdensome, and less expensive sources); *and Liberty Cty. Mut. Ins.*, 537 S.W.3d at 222–23 (granting mandamus relief from order compelling the deposition of claims adjustor who verified insurer's interrogatory answers because she possessed no personal knowledge of insured's medical condition and because her answers merely referred to insured's own medical records); *with In re Allstate Fire & Cas. Ins.*, No. 14-20-00235-CV, 2020 WL 5792048 at *1 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, orig. proceeding) (per curiam) (mem. op.) (denying mandamus relief from an order compelling deposition of insurer's corporate representative because the insurer failed to show entitlement to relief); *In re Hamilton*, No. 13-20-00254-CV, 2020 WL 5494503, at *4–7 (Tex. App.—Corpus Christi–Edinburg Sept. 10, 2020, orig. proceeding [mand. pending]) (mem. op.) (granting mandamus relief from order quashing deposition of corporate representative but limiting scope to insurer's defenses to insured's UIM claim); *Liberty Cty. Mut. Ins.*, 606 S.W.3d at 874–75 (denying

18

mandamus relief and permitting deposition of insurer's corporate representative due to insurer's failure to show that the insured could obtain the discovery sought from other more convenient, less burdensome, and less expensive sources and its failure to stipulate that the other driver's hit-and-run negligence caused the insured's damages); *In re USAA Gen. Indem.*, No. 13-19-00487-CV, 2020 WL 1452939, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 24, 2020, orig. proceeding [mand. pending]) (mem. op.) (denying mandamus relief from an order compelling deposition of insurer's corporate representative because the insurer failed to show entitlement to relief); *In re Perry*, No. 13-18-00676-CV, 2019 WL 1723509, at *8 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, orig. proceeding) (mem. op.) (granting mandamus relief from order quashing deposition of insurer's corporate representative but limiting its scope to liability and damages of underlying accident and excluding information readily available to insured from other sources); *In re Safeco Ins. Co. of Am.*, No. 13-17-00264-CV, 2017 WL 2443082, at *1 (Tex. App.—Corpus Christi–Edinburg June 6, 2017, orig. proceeding [mand. denied]) (mem. op.) (denying mandamus relief from an order compelling deposition of insurer's corporate representative because the insurer failed to show entitlement to relief); *In re Luna*, No. 13-16-00467-CV, 2016 WL 6576879, at *7–8 (Tex. App.—Corpus Christi–Edinburg Nov. 7, 2016, orig. proceeding) (mem. op.) (granting mandamus relief from an order quashing the deposition of the insurer's corporate representative because the scope of deposition included only liability and damages issues contested by insurer); *and In re Garcia*, No. 04-07-00173-CV, 2007 WL

1481897, at *2–3 (Tex. App.—San Antonio May 23, 2007, orig. proceeding) (per curiam) (mem. op.) (granting mandamus relief from order quashing deposition of insurer's corporate representative because discovery sought information relevant to insurer's multiple defenses to liability and damages).[6]

Indeed, relying on the presentment analysis of *Brainard*, a majority of our sister courts hold that an insurer has no adequate remedy by appeal when ordered to respond to claims handling and adjustment discovery served in support of extracontractual liability causes of action that are not yet ripe because the insured's direct action for UM/UIM benefits remains pending and its eventual adjudication may render such causes of action moot. *See In re James River Ins.*, No. 14-20-00390-CV, 2020 WL 6143163, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 20, 2020, orig. proceeding) (per curiam) (mem. op.); *Germania Select Ins.*, 2020 WL 5741595, at *3–4; *In re Progressive Cty. Mut. Ins.*, No. 04-20-00178-CV, 2020 WL 3815927, at *5–6 (Tex. App.—San Antonio July 8, 2020, orig. proceeding); *In re State Farm Mut. Auto. Ins.*, No. 01-19-00821-CV, 2020 WL 1264184, at *7–8 (Tex. App.—Houston [1st Dist.] Mar. 17, 2020, orig. proceeding) (mem. op.); *In re Colonial Cty. Mut. Ins.*, No. 01-19-00391-CV, 2019 WL 5699735, at *4–5 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding) (per curiam) (mem.

---

[6]Consistent with this authority, in *Blevins*, this court affirmed a trial court's order quashing a trial subpoena for State Farm's corporate representative because the agreed stipulations established the existence and amount of the UIM coverage applicable to an underlying judgment of liability and damages, if any, and the corporate representative lacked personal knowledge of any evidence of negligence against the other motorist or damages proximately caused thereby. 2018 WL 5993445, at *14–15.

op.); *In re Allstate Fire & Cas. Ins.*, No. 04-18-00676-CV, 2018 WL 6624885, at *3 (Tex. App.—San Antonio Dec. 19, 2018, orig. proceeding) (mem. op.); *Liberty Cty. Mut. Ins.*, 557 S.W.3d at 856–58; *State Farm Mut. Auto. Ins.*, 553 S.W.3d at 562–65; *In re Germania Ins.*, No. 13-18-00102-CV, 2018 WL 1904911, at *4–5 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.); *In re Allstate Fire & Cas. Ins.*, No. 12-17-00266-CV, 2017 WL 5167350, at *4 (Tex. App.—Tyler Nov. 8, 2017, orig. proceeding) (mem. op.); *Liberty Cty. Mut. Ins.*, 537 S.W.3d at 220–23; *In re Geico Advantage Ins.*, No. 05-16-01249-CV, 2016 WL 7163943, at *1–2 (Tex. App.—Dallas Dec. 1, 2016, orig. proceeding) (mem. op.); *In re AAA Tex. Cty. Mut. Ins.*, No. 12-15-00277-CV, 2016 WL 4395817, at *2–4 (Tex. App.—Tyler Aug. 18, 2016, orig. proceeding) (mem. op.); *In re Farmers Tex. Cty. Mut. Ins.*, 509 S.W.3d 463, 465–67 (Tex. App.—Austin 2015, orig. proceeding); *In re Allstate Cty. Mut. Ins.*, 447 S.W.3d 497, 504 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re Progressive Cty. Mut. Ins.*, 439 S.W.3d 422, 427–28 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re Old Am. Cty. Mut. Fire Ins.*, No. 13-12-00700-CV, 2013 WL 398866, at *3–4 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2013, orig. proceeding) (mem. op.); *In re State Farm Mut. Auto. Ins.*, 395 S.W.3d 229, 237–38 (Tex. App.—El Paso 2012, orig. proceeding) (op. on reh'g); *In re Am. Nat'l Cty. Mut. Ins.*, 384 S.W.3d 429, 436–39 (Tex. App.—Austin 2012, orig. proceeding); *In re Reynolds*, 369 S.W.3d 638, 650–55 (Tex. App.—Tyler 2012, orig. proceeding); *In re Old Am. Cty. Mut. Fire Ins.*, No. 13-11-00412-CV, 2012 WL 506570, at *4–5 (Tex. App.—Corpus Christi–Edinburg Feb. 16, 2012, orig. proceeding) (mem.

op.); *In re United Fire Lloyds*, 327 S.W.3d 250, 256 (Tex. App.—San Antonio 2010, orig. proceeding).

Implicit in these decisions, however, is a reasonable inference that the insurer's handling and adjustment of a claim for UM/UIM benefits may, in fact, become actionable, and such discovery permissible, if the insured obtains a judgment establishing the liability of the uninsured or underinsured motorist and damages resulting thereby in the underlying direct action. If the handling and adjustment of the claim made the basis of the direct action were never potentially actionable, then these decisions would not refer to the possibility of mootness as merely conditional. Indeed, none of these decisions prophylactically foreclose the accrual or ripening of common law bad faith or statutory extracontractual liability causes of action under such circumstances.

Moreover, none of these decisions mention the accrual analysis of *Arnold*, as modified by *Murray*, let alone attempt to reconcile their recognition of a contractual duty to pay without resort to litigation with the presentment analysis of *Brainard* that mandates litigation as a condition precedent to accrual and payment of a UIM claim. As a result, the issue presented by this proceeding appears to be one of first impression.[7]

---

[7]We are mindful that the supreme court has set two original proceedings involving extracontractual UM/UIM liability causes of action against State Farm for oral argument on December 2, 2020. *See In re State Farm Mut. Auto. Ins.*, No. 19-0791 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=19-0791&coa=cossup), and No. 19-0792 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=19-0792&coa =cossup) (last examined Nov. 14, 2020). According to its briefs on the merits in those

proceedings, State Farm seeks mandamus relief in the form of writs to the respective county courts at law to abate discovery and trial of the insureds' statutory extracontractual liability causes of action pending a judicial determination of the merits of their previously settled negligence causes of action against the allegedly underinsured motorists in order to establish their legal entitlement to damages for bodily injury covered by their policies, if any. *See id.* The only causes of action pleaded by the insureds are statutory extracontractual liability causes of action. *See id.* Distinct from the circumstances of this proceeding, the insureds never prosecuted a direct action against State Farm to a binding judgment of liability and damages attributable to the allegedly underinsured motorists. *See id.* In both proceedings, the Dallas Court of Appeals denied mandamus relief peremptorily. *In re State Farm Mut. Auto. Ins.*, 606 S.W.3d 780, 780 (Tex. App.—Dallas 2019, orig. proceeding [mand. pending]) (mem. op.); *In re State Farm Mut. Auto. Ins.*, No. 05-19-00920-CV, 2019 WL 3955762, at *1 (Tex. App.—Dallas Aug. 22, 2019, orig. proceeding [mand. pending]) (mem. op.).

On the same day, the supreme court has set for oral argument another original proceeding involving a claim for UIM benefits in which the insurer seeks mandamus relief in the form of a writ ordering the trial court to render a final judgment in its favor on a jury verdict favorable to its insured in the underlying negligence action because, due to the *Stowers* exposure of the other motorist's insurer, its insured settled with the other motorist for the total amount of the verdict, said amount greatly exceeding the $30,000 limits of the other motorist's automobile liability policy, thereby negating its insured's claim that the other motorist was underinsured. *See In re USAA Gen. Indem.* No. 20-0075 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=20-0075&coa =cossup) (last examined Nov. 14, 2020). Distinct from the circumstances of this proceeding, the insured argued that, because the verdict was never reduced to judgment and he dismissed his negligence action with prejudice as part of the settlement, there was no judicial determination of the other motorist's underinsured status to foreclose his UIM claim. *See id.* The San Antonio Court of Appeals denied mandamus relief peremptorily. *In re USAA Gen. Indem.*, 606 S.W.3d 781, 781 (Tex. App.—San Antonio 2020, orig. proceeding [mand. pending]) (per curiam) (mem. op.).

The supreme court has also requested briefing on the merits in another original proceeding involving a claim for UIM benefits in which the insurer seeks mandamus relief from an order compelling the deposition of its corporate representative. *See In re USAA Gen. Indem.*, No. 20-0281 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=20-0281&coa=cossup) (last examined Nov. 14, 2020). As in the State Farm proceedings, the insured has not yet obtained a judicial determination of liability and damages demonstrating the underinsured status of the other motorist. *See id.* The

23

## IV. Analysis

State Farm complains that the district court abused its discretion by ordering discovery concerning its handling and adjustment of Mentzer's UIM claim because, as a matter of law, its timely payment of the policy limits judgment she obtained in the county court at law satisfied any contractual, common law, or statutory duty it had regarding the handling and adjustment of her claim, and thereby foreclosed the accrual or ripening of the extracontractual causes of action made the basis of her written discovery requests. Stated differently, State Farm argues that, because *Brainard* relieves UM/UIM insurers of any contractual obligation to adjust and pay UM/UIM benefits unless and until liability becomes reasonably clear through the entry of a binding judgment, any failure on its part to adjust and pay Mentzer's claim for UIM benefits

Corpus Christi–Edinburg Court of Appeals denied mandamus relief peremptorily. *USAA Gen. Indem.*, 2020 WL 1452939, at *1.

Finally, the supreme court has granted a petition for review and set for oral argument on January 7, 2021, an insurer's challenge to the use of the Uniform Declaratory Judgment Act as a means of obtaining both the judicial determination required by *Brainard* and an award of attorney's fees foreclosed by *Brainard. See Allstate Ins. v. Irwin*, No. 19-0885 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=19-0885&coa=cossup) (last examined Nov. 14, 2020). The San Antonio Court of Appeals affirmed a declaratory judgment establishing the insurer's duty to pay UIM benefits and the corresponding award of attorney's fees under the UDJA. *Allstate Ins. v. Irwin*, 606 S.W.3d 774, 775–76 (Tex. App.—San Antonio 2019, pet. granted).

None of these decisions, nor any of the briefing submitted to the supreme court for consideration upon their review, including the amicus filed by State Farm in *Irwin*, make any mention of *Arnold* or *Murray*.

before its timely payment of the county court at law judgment is not actionable as a violation of its common law duty of good faith and fair dealing.

*Arnold*, as modified by *Murray*, expressly holds to the contrary, and absent an express rejection of its modified accrual analysis by *Brainard*, as well as a corresponding confirmation that it is the responsibility of the judiciary—and not contracting insurers—to handle and adjust UM/UIM claims, the doctrine of stare decisis binds us to the more factually specific decision. By successfully prosecuting her direct action for UIM benefits to a judgment binding upon and payable by State Farm, Mentzer may now prosecute a common law bad faith cause of action in accordance with *Arnold*, including seeking information and documentation reasonably calculated to lead to the discovery of evidence admissible to demonstrate State Farm's alleged mishandling and maladjustment of her UIM claim.

## A. *Matlock* authorized a "direct action" for UM benefits

When two lines of precedent appear to conflict, their reconciliation, if possible, often requires reconsideration of their origins. In this instance, we must reconsider the reasoning by which the elements of a negligence cause of action against an uninsured or underinsured motorist became material terms for the payment of UM/UIM benefits through the authorization of a direct action against the insurer. We must also examine how their incorporation into the standard automobile liability policy through the use of the phrase "legally entitled to recover as damages" eventually led the supreme court to treat first-party UM/UIM coverage as third-party liability coverage.

25

Both lines of precedent informing our analysis in this original proceeding find their origin in the authorization of a direct action against an insurer for UM benefits. In *State Farm Mutual Automobile Insurance v. Matlock*, the supreme court held that a Texas insured may prosecute a "direct action" for UM benefits against her insurer without first obtaining a liability judgment against the uninsured motorist to demonstrate legal entitlement to recovery. 462 S.W.2d 277, 278 (Tex. 1970) (op. on reh'g). Having withdrawn its original opinion, the court nevertheless adopted its central holding by reference in expressly rejecting State Farm's argument that a judgment against the uninsured motorist was a condition precedent to making a claim for UM benefits under its policy and that the trial court had erred by denying its plea in abatement pending the entry of such a judgment:

> State Farm is before this court upon points which urge that the Matlocks failed to obtain a judgment against the uninsured motorist. It says that a judgment against the uninsured motorist is a condition precedent to the Matlocks' action against State Farm. In our original opinion, we held that neither Article 5.06–1, Insurance Code, V.A.T.S., nor the policy provisions of the insurance contract between State Farm and the Matlocks required the Matlocks to obtain a judgment against an uninsured motorist prior to seeking a judgment against the insurer.

*Id.*

Indeed, in its original opinion the court held that a judgment against the uninsured motorist was not necessary because the court interpreted the phrase "legally entitled to recover as damages" to not require actual adjudication of the underlying

26

negligence cause of action against the uninsured motorist as a condition precedent to

State Farm's contractual liability under the policy:

> The Texas "Uninsured Motorist" statute is quoted in full above. This statute does not require the filing of a prior suit against the uninsured motorist to determine legal liability and damages as a condition precedent to the filing of a suit against one's own insurer. The statute is absolutely silent on whether a direct action against the insurer is proper. Endorsement 230 of the insurance policy quoted above, which was promulgated by the Texas State Board of Insurance, giving uninsured motorist protection, is also silent as to the proper mode of proceeding.

> State Farm contends that the following policy provision requires a holding that the insured must first proceed to judgment against the uninsured motorist before filing suit against his insurer. It obligated the insurer to pay the insured as follows:

>> "To pay all sums which the insured or his legal representative shall be *legally entitled to recover as damages* from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured . . . ."

> This policy provision does not, in our opinion, require a successful lawsuit against the driver of an uninsured automobile as a condition precedent to recovering on the insurance contract.

> *We hold that in an uninsured motorist case, the insured may maintain a direct action against his insurer without first litigating against the uninsured motorist.* The necessity of two trials on the issues of liability and damages is thereby eliminated. In cases wherein the insurance company has refused to give its consent to sue an uninsured motorist, the provision in the policy under coverage U would require two such trials. In a direct proceeding against the insurer, a policyholder will be able to avoid the expense and the lengthy delay of litigating two separate lawsuits for the purpose of collecting one judgment. We can find no justification in forcing a party, for whom express statutory protection has been enacted, to endure protracted litigation and expense in order to collect damages to which he proves himself justly entitled under policy coverage for which he has paid the premiums.

The fact that one of the parties in the litigation happens to be an insurance company and that insurance companies may not be popular with juries, by no means makes it immune from being sued under the terms of its own contract. It may be true that the injection of insurance during a trial tends to influence the verdict not only as to liability, but also as to the amount of damages involved, but we do not find this factor to be controlling. Direct actions against hospitalization, life and Workmen's Compensation carriers are now commonplace. Liability of the insurer to the insured in an uninsured motorist case arises by virtue of the specific provisions of the contract above quoted.

*State Farm Mut. Auto. Ins. v. Matlock*, 13 Tex. Sup. Ct. J. 287, 289–90 (April 1, 1970)

(emphasis of policy language in original, other emphasis added).[8]

Although both the court's original withdrawn opinion and its opinion on rehearing authorized direct actions for UM benefits, neither explained what was intended by their reference to the phrase "direct action" by either identifying the cause of action to be adjudicated or discussing the means and timing of its accrual or ripening. *Compare id. with Matlock*, 462 S.W.2d at 278 ("Texas has not had an occasion to allocate the burden of proving the uninsured status of an operator in direct actions by an insured against his insurer, but most courts outside of Texas have placed the burden upon the

---

[8]Before the advent of UM coverage, automobile liability insurers offered unsatisfied judgment coverage which, as a condition precedent to the payment of benefits, required the insured to first obtain, then to unsuccessfully attempt to execute on a judgment of liability and damages against the uninsured motorist. *See* Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 7.3(C) (Rev. 2d ed. 1999). The critical distinction between this antecedent form of coverage and UM coverage was the latter's elimination of "the requirement that the insured obtain a judgment against the uninsured motorist prior to recovering under the new type of coverage." *Id.* at § 1.9. By rejecting State Farm's attempt to reimpose an unsatisfied judgment condition precedent upon UM coverage, the original opinion and opinion on rehearing in *Matlock* placed the legal entitlement requirement in its proper historical context.

claimant."). The omission is critical because, for accrual and ripeness purposes, it led to the eventual treatment of a first-party UM/UIM claim against the insurer as a third-party liability claim against the uninsured or underinsured motorist. *See Matlock*, 462 S.W.2d at 278.

**B.      Texas prohibited direct actions against automobile liability insurers**

The authorization of a direct action for UM benefits led directly to the application of third-party liability principles to first-party UM coverage. When the supreme court decided *Matlock*, a direct action was one in which an injured third-party sued the automobile liability insurer of an insured tortfeasor directly seeking damages for the insured's alleged negligence in causing the underlying motor vehicle accident; Texas prohibited such actions unless expressly authorized by either statute or contract. *See Penny v. Powell*, 347 S.W.2d 601, 602–03 (Tex. 1961) (contrasting the prohibitions of Texas Rules of Civil Procedure 38(c), 51(b), and 97(f) with statutory authority granted in Louisiana). The reasoning for such prohibition was succinctly stated by the Amarillo Court of Civil Appeals in *Ray v. Moxon*:

> We again call attention to the fact that plaintiff Moxon was not a party to this policy. Neither by express stipulations therein, nor by the use of language necessarily implying such, is he a beneficiary. Could Ray, the assured, have originally maintained suit against the insurer under this policy and collected a judgment upon allegations of the facts pleaded by plaintiff and before any judgment was ever rendered against him determinative of liability and the extent of damages? We think not. This, for one reason, because the policy itself requires the existence of a final judgment against the assured or an agreement, to which the insurer was a party, so as to have determined the intrinsic character of the happening and the amount of damages as a condition precedent to his right to sue.

> Would a stranger to the contract then be given a right inhibited by it expressly to the very party who made it? *The recovery of a judgment is the manner provided in the contract by which the insured proves to the insurer that the occurrences relied upon by the injured party were covered by the policy and the extent of damages. It is the mode provided for establishing liability and loss. It is the judicial ascertainment of the facts which give rise to liability. Thence forward after the rendition of such a judgment, the mouth of the insured is closed by his contract as to the existence of the happenings therein adjudicated and the resultant damages.* To have these questions definitively determined in a suit between the original parties is undoubtedly a matter of some concern to the insurer in consideration of which it could afford to issue a policy for a less consideration. If such an arrangement suits both parties to the contract and same is valid, certainly an appellate court is without authority to nullify what they have plainly agreed upon.

56 S.W.2d 469, 472–73 (Tex. App.—Amarillo 1933) (emphasis added), *aff'd*, 81 S.W.2d 488, 488–89 (Tex. [Comm'n Op.] 1935) (recognizing and approving adoption of lower court's reasoning by *Kuntz v. Spence*, 67 S.W.2d 254, 256–57 (Tex. Comm'n App. 1934, holding approved)); *see also Bluth v. Neeson*, 94 S.W.2d 407, 408 (Tex. 1936) (collecting authorities and holding defendant's automobile liability insurer improperly joined as co-defendant because policy expressly prohibited insurer's contractual liability unless and until the insured's liability had been determined by final judgment after actual trial or by an agreement in settlement of the third-party claim); *Seaton v. Pickens*, 87 S.W.2d 709, 710 (Tex. [Comm'n Op.] 1935) ("No right of action on account of injury to a third person arises, either in favor of the assured or in favor of the injured person, against the insurer until after final judgment has been rendered against the assured in the injured person's suit against him.").

To this day, only when the insured tortfeasor is finally agreed or adjudicated liable to the injured third party can the latter sue the former's automobile liability insurer directly, and only then by asserting a contractual cause of action as a third-party beneficiary of the liability policy. *See In re Essex Ins.*, 450 S.W.3d 524, 525 (Tex. 2014) (orig. proceeding); *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997); *State Farm Cty. Mut. Ins. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989); *Great Am. Ins. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969) (orig. proceeding). In other words, a *contractual* third-party beneficiary cause of action accrues with the entry of a final, binding judgment of liability and damages in the underlying *negligence* cause of action against the insured tortfeasor. *See Essex Ins.*, 450 S.W.3d at 525.

## C. *Brainard* relied exclusively on the accrual analysis of *Henson*

Jump forward several decades and the supreme court finds this third-party beneficiary analysis persuasive in deciding that the legal entitlement language creating UM/UIM coverage requires a judicial determination of the uninsured or underinsured motorist's liability for covered damages as a condition precedent for payment of benefits. This is the origin of the line of precedent upon which State Farm relies.

In *Brainard*, the supreme court addressed an issue that had been percolating through the intermediate appellate courts for almost two decades, i.e., whether Chapter 38 of the Texas Civil Practice and Remedies Code authorized an award of attorney's fees in the event an insurer wrongfully refused to pay a UM/UIM claim. *Compare Brainard*, 216 S.W.3d at 817–18 (citing courts of appeals in Waco, Texarkana,

31

and San Antonio as holding suit for UIM benefits "like any other breach of contract suit" permitting recovery of attorney's fees with proper pre-suit presentment), *and State Farm Mut. Auto. Ins. v. Clark*, 694 S.W.2d 572, 575 (Tex. App.—Corpus Christi–Edinburg 1985, no writ) (upholding jury award of attorney's fees for UM insurer's wrongful refusal to pay claim under predecessor to Chapter 38), *with Brainard*, 216 S.W.3d at 818 (citing courts of appeals in Dallas, Eastland, Houston [14th], Austin, and Amarillo as holding "a UIM policy is different because the insurer's duty to pay does not arise until the underinsured motorist's liability, and the insured's damages, are legally determined"). Observing that an essential element to the recovery of attorney's fees under Chapter 38 is the failure of a party to timely tender payment of "the just amount owed" to the party seeking such recovery after proper presentment of the claim, the supreme court concluded that the effectiveness of presentment hinged completely upon the accrual of a duty to pay. *See Brainard*, 216 S.W.3d at 818.

Given that the accrual of a duty to pay the just amount owed, in turn, depended upon the insured's legal entitlement to recover damages against the underinsured motorist, the supreme court concluded that the presentment contemplated for the statutory recovery of attorney's fees, absent an extracontractual agreement between the parties, required the UIM insured to obtain a binding judgment of liability in tort and resulting damages that established the underinsured status of the other motorist:

> The UIM insurer is obligated to pay damages which the insured is "legally entitled to recover" from the underinsured motorist. Tex. Ins. Code art. 5.06–1(5). As discussed above, we have determined that this language

means the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist. *Henson*[ *v. So. Farm Bureau Cas. Ins.*], 17 S.W.3d [652, 654 (Tex. 2000)]. Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay. *Id.* Where there is no contractual duty to pay, there is no just amount owed. Thus, under Chapter 38, a claim for UIM benefits is not presented until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist.

Of course, the insured is not required to obtain a judgment against the tortfeasor. . . . [*Matlock*, 462 S.W.2d at 278.] The insured may settle with the tortfeasor, as Brainard did in this case, and then litigate UIM coverage with the insurer. But neither a settlement nor an admission of liability from the tortfeasor establishes UIM coverage, because a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance. *Henson*, 17 S.W.3d at 654. Brainard's contention that a UIM policy is to be treated like other contracts, for which damages are liquidated in a judicial proceeding and attorney's fees incurred are recoverable, misinterprets the nature of UIM insurance. *The UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined. Id.*

*Id.* (emphasis added). Accordingly, *Brainard* held that legal entitlement, as an essential element of presentment, requires a binding judgment of liability in tort and resulting damages establishing the uninsured or underinsured status of the other motorist. *See id.* Only then does an insurer's duty to pay "the just amount owed" in UM/UIM benefits accrue to the benefit of the insured. *Id.*

In this manner, the presentment analysis of *Brainard* implicitly adopted the accrual analysis for a contractual third-party beneficiary cause of action, including its

requirement of a binding judgment establishing the negligence of the insured tortfeasor, and the damages proximately caused thereby, as a condition precedent for payment of policy benefits by his liability insurer. *See id.* at 817–19. In effect, despite paying a premium for first-party UM/UIM coverage, the insured obtained only third-party liability coverage for the uninsured or underinsured motorist. To understand how the supreme court ultimately reached this conclusion in *Brainard*, we consider the authority upon which it primarily relied.

### D. *Henson* adopted the accrual analysis of *Sikes v. Zuloaga*

As is evident from the language quoted above, with the exception of its singular citation to *Matlock* to confirm that a judgment *against the tortfeasor* is not a condition precedent for UIM coverage, *Brainard* relied exclusively on the accrual analysis of *Henson* to reach its conclusion that a judgment *against the insurer* is. *Henson*, in turn, appears to have relied on the accrual analysis of the Austin Court of Appeals in *Sikes v. Zuloaga*, 830 S.W.2d 752 (Tex. App.—Austin 1992, no writ), which expressly treats a first-party UM claim like a third-party beneficiary claim. Because the accrual analysis of *Henson* is textually silent as to supportive interpretive authority, however, we turn to the briefing of the parties contained in the original record in the supreme court to guide us as to the basis of its reasoning.[9]

---

[9]In *Gulf, Colorado & Santa Fe Railway v. Conley*, the supreme court examined the "original record" in several of its previous decisions and the "original papers on file" concerning certain decisions of the courts of civil appeals it ultimately declined to review to discern their historical context for the purpose of clarifying the manner of

### i.    A direct action is *ex contractu*, not *ex delicto*

As an initial matter, in holding that the timely payment of a policy limits judgment by the UIM insurer foreclosed the accrual of contractual prejudgment interest, *Henson* confirmed that the cause of action against the insurer is *ex contractu* in nature, not *ex delicto*:

> But Henson conflates two prejudgment interest concepts. There is no doubt that if Henson were recovering directly from Contreras, the judgment would include prejudgment interest. And the insurers do not dispute that had the trial court awarded prejudgment interest against the tort defendants, the insurers would be obligated to pay the entire judgment including that portion awarded for prejudgment interest, to the extent of policy limits. But here, Henson is seeking to recover prejudgment interest based not on the tortfeasor's obligations, but upon the insurance companies' obligations. *Unlike the relationship between Henson and Contreras, which is that of injured party and tortfeasor, the relationship between Henson and the insurers is that of contracting parties. Consequently, their respective duties are established by the contract.*

17 S.W.3d at 653 (emphasis added) (footnote omitted). The supreme court thereby agreed with Henson—who had alleged that the insurers breached their insurance

---

charging a jury in a personal injury suit against a common carrier. 260 S.W. 561, 564–65 (Tex. 1924). A court of appeals may similarly examine and take judicial notice of the original record in proceedings before the supreme court and the court of criminal appeals through a search of their respective websites. *See In re Villa*, No. 07-18-00220-CV, 2018 WL 3596745, at *1 n.4 (Tex. App.—Amarillo July 26, 2018, orig. proceeding) (mem. op.); *see generally Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (holding judicial notice of a public record by an appellate court appropriate when the authenticity and contents "are capable of accurate and ready determination by resort to a published record whose accuracy cannot reasonably be questioned"). We take judicial notice of the briefing of the parties in *Henson*, as available through an online search of just such a published record. *See Henson v. S. Farm Bureau Cas. Ins.*, No. 99-0453 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=99-0453&coa=cossup) (last examined Nov. 14, 2020).

contracts, first by denying his pre-litigation demands for UIM benefits, then by delaying payment until after the entry of a final judgment in the underlying negligence causes of action against the allegedly underinsured motorists—that the insurers' performance of their contractual obligations formed the basis of his claims. *See id.*

The supreme court disagreed, however, that Henson had demonstrated any breach of these insurance contracts:

> The policies provided that the insurers will pay damages that a covered person is legally entitled to recover from an uninsured/underinsured motorist. When the jury found Contreras at fault for the accident and found Henson damaged by her negligence, Henson became legally entitled to recover from her. And because the damages exceeded Contreras' liability policy limits, Henson became entitled to the uninsured/underinsured motorist policy benefits, up to the policy limits. By the terms of the policies, no obligation to pay the claim existed until the jury established Contreras' liability. And the insurers paid the claim promptly after the jury made its findings. Because no contractual duty was breached, Henson had no right to receive the benefits earlier than he in fact received them. Therefore no compensation is due for lost use of the funds. Thus Henson is not entitled to prejudgment interest on top of the benefits he is otherwise entitled to receive from the insurers.

*Id.* at 654.[10] In reaching this conclusion, the supreme court appears to have relied upon an interpretation of the legal entitlement terms of the policies and an apparent

---

[10]This court followed the legal entitlement holding of *Henson* in reversing an award of prejudgment interest on two UIM claims in *Truck Insurance Exchange v. Robertson*, No. 02-99-00186-CV, slip op. at 5–6 (Tex. App.—Fort Worth Jan. 25, 2001, no pet.) (not designated for publication), as recounted after remand by *Texas Insurance Exchange v. Robertson*, 89 S.W.3d 261, 263 (Tex. App.—Fort Worth 2002, no pet.). Neither opinion cites—let alone discusses—*Arnold* or *Murray*.

concession by Henson that the insurer's obligation to pay did not arise until the judgment against Contreras was rendered. *See id.*

### ii. *Sikes* provided supportive precedent

An examination of the briefing of the parties in *Henson* reveals that the primary authority cited for the court's eventual interpretation of the legal entitlement language of the policy was the reasoning in *Sikes*,[11] which expressly applied the accrual analysis for a third-party beneficiary claim to the presentment analysis for a first-party UM claim to deny statutory attorney's fees:

> Interpreting the clause ["legally entitled to recover as damages"] to place a condition precedent upon recovery is also consistent with the law governing third-party recovery under a liability-insurance contract. A victim of an auto accident cannot make a claim against the liability insurance company of an insured driver until the victim establishes, by judgment or agreement, that the insured driver is legally obligated to pay damages. [*Ollis*, 768 S.W.2d at 723.][12] We find this reasoning applicable

---

[11]The other authority cited in support of the court's eventual interpretation was *Essman v. General Accident Insurance Co. of America*, a decision issued subsequent to and in reliance upon *Sikes*. 961 S.W.2d 572, 573–74 (Tex. App.—San Antonio 1997, no pet.) (holding that insured's settlement of a third-party liability lawsuit filed against her by the allegedly uninsured motorist negated his legal entitlement to recovery as a basis for his UM claim).

[12]In *Ollis*, the supreme court described the accrual or ripening of a third-party beneficiary claim in the following manner: "[A] party injured by the insured is a third[-]party beneficiary of a liability insurance policy. However, he cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party." 768 S.W.2d at 723 (citing *Murray*, 437 S.W.2d at 265).

In *Murray*, the supreme court had previously discussed the accrual or ripening of a third-party beneficiary claim in the following terms:

to Sikes's claim. We agree with Allstate that uninsured motorist coverage is designed to place the injured party in the same position as if the other motorist had been insured. *Greene v. Great Am. Ins. Co.*, 516 S.W.2d 739, 743 ([Tex. App.—Beaumont] 1974, writ ref'd n.r.e.)[, *disapproved on other grounds by Unigard Sec. Ins. v. Schaefer*, 572 S.W.2d 303, 308 (Tex. 1978)].

830 S.W.2d at 753–54. With its last citation, *Sikes* clearly accepts the premise that the

uninsured motorist is the "insured" under the injured party's UM coverage, despite the

absence of any contractual relationship with the insurer.

Indeed, in *Greene*, the Beaumont Court of Appeals employed a possessive

apostrophe to "punctuate" this point:

There appears to be no authority to negate the conclusion that Texas has followed the majority of jurisdictions in enacting *uninsured motorists' coverage* with the premise that such coverage is to put the motorists injured in a collision with an uninsured vehicle in the same position that they would have been in had the other motorists been properly insured.

516 S.W.2d at 743 (emphasis added).

*Sikes* also interpreted *Matlock* to exclude only a judgment against the uninsured

motorist as a condition precedent, not a judgment against the insurer:

Sikes erroneously relies on *State Farm Mutual Automobile Insurance Co. v. Matlock*, 446 S.W.2d 81 ([Tex. App.—Texarkana] 1969), *aff'd in part*, *rev'd*

---

Great American's policy obligates it to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages. No action exists against the insurer, under its policy, until the insured's obligation to pay has been finally determined ["]either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.["] Under such a policy a third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured.

437 S.W.2d at 265 (quoting standard automobile liability policy language).

> *in part*, 462 S.W.2d 277, 278 (Tex. 1970), to support her contention that
> no condition precedent exists. That case allowed an injured party to sue
> his insurance company directly for payment under the uninsured-motorist
> coverage without first suing the uninsured motorist. *Matlock*, however,
> does not remove all conditions precedent. In *Matlock*, liability was not
> contested. Further the supreme court in reversing held that to recover
> under the policy, the injured party still had to prove that the other motorist
> was uninsured and had to establish the amount of the damages. *Matlock*,
> 462 S.W.2d at 278.

830 S.W.2d at 754. Because there was no presentment of an unpaid claim nor any failure

to tender a just amount owed absent the condition precedent of a judgment determining

the tort liability of the uninsured motorist and the amount of resulting damages, *Sikes*

concluded the statutory requirements for awarding statutory attorney's fees were not

met. *Id.*

### iii. Third-party liability coverage was concurrently available

Returning to *Henson*, in addition to noting that Henson apparently conceded that

the judgment against Contreras was a condition precedent to payment of benefits, a

concession supported by Henson's failure to characterize his cause of action as a breach

of contract in his briefing,[13] the supreme court may also have found *Sikes* persuasive

because one of the UIM insurers was also the liability insurer for one of the allegedly

underinsured motorists. As a result, this insurer was potentially liable for Henson's

damages under both the liability coverage of its policy through the very type of third-

---

[13]Ironically, it was Southern Farm Bureau, not the Hensons, that characterized their cause of action as one for breach of contract in order to negate its contractual liability for prejudgment interest due to the absence of any breach.

party beneficiary claim considered by *Sikes*, and the UIM coverage of the same policy, thereby facilitating the supreme court's implicit treatment of this party defendant as both an insured under the policy's third-party liability coverage and an "underinsured motorist" under the same policy's UIM coverage, as well as the UIM coverage in Henson's policy.

On March 3, 1991, Henson was a passenger in a truck driven by Robert Millican when it collided with a truck driven by Consuelo Contreras. *Henson*, 17 S.W.3d at 652. Later that month, Henson submitted UIM claims to his own insurer, Texas Farm Bureau Mutual Insurance Company, and to Millican's insurer, Southern Farm Bureau Casualty Insurance Company. *Id.* Before expiration of the two-year statute of limitations on his negligence causes of action, Henson and his wife sued both Millican and Contreras and joined Southern Farm Bureau and Texas Farm Bureau as party defendants, seeking to recover UIM benefits. *Id.* at 652–53.

With the permission of the defendant insurers, the Hensons settled with Contreras for $20,000, the limits of her automobile liability policy. *Id.* at 653. Before proceeding to trial with Millican, the Hensons entered into agreed stipulations that severed the remaining negligence cause of action from the UIM claims against the insurers and bound the insurers to any judgment rendered in the negligence action. *Id.* Upon the trial of the negligence action, the jury found Contreras negligent as a settling person and 100% comparatively responsible for the underlying accident and awarded Henson $133,842.13 in damages. *Id.* Within thirty days of the judgment, as stipulated,

the insurers tendered their aggregate UIM policy limits of $45,000, which Henson promptly rejected for their failure to include prejudgment interest on that amount. *Id.*

Had the jury found Millican negligent and the trial court rendered a judgment against him in favor of Henson, barring any exclusions not discussed in the decision, Henson would then have become a third-party beneficiary of the liability coverage under Southern Farm Bureau's policy asserting a first-party claim for UIM coverage under the same policy. Given the supreme court's conclusion that the duty of the insurers to pay Henson's UIM claims did not accrue or ripen until the rendition of the judgment in the negligence action, it is relatively easy to see how the court could have found the third-party beneficiary analysis of *Sikes* persuasive under the circumstances.

By relying on *Henson*, and thereby *Sikes*, *Brainard* implicitly adopted this exact same third-party beneficiary analysis for purposes of holding that the presentment of a UM/UIM claim requires a judicial determination of the liability of the uninsured or underinsured motorist and the amount of damages suffered by the injured insured. Critically, none of the parties in *Brainard* briefed the supreme court concerning the accrual analysis of *Arnold*, as modified by *Murray*.[14] Moreover, none of the decisions

---

[14]We take judicial notice of the briefing of the parties in *Brainard*, and its companion cases, *Nickerson* and *Norris*, which similarly omitted mention of the accrual analysis of *Arnold*, as modified by *Murray. See Brainard v. Trinity Univ. Ins.*, No. 04-0537 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=04-0537&coa=cossup) (last examined Nov. 14, 2020); *State Farm Mut. Auto. Ins. v. Nickerson*, No. 04-0427 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=04-0427&coa=cossup) (last examined Nov. 14, 2020); *State Farm Mut. Auto. Ins. v. Norris*, No. 04-0514 (Tex.)

reflecting the split of authority *Brainard* finally resolved, including *Sikes*, addressed the accrual analysis of *Arnold*, as modified by *Murray*.[15] Because neither party addressed these earlier decisions in its briefing to the supreme court, a jurisdictional conundrum created by its presentment analysis was left unresolved.

## E.  The jurisdictional conundrum left unresolved by *Brainard*

If no duty to pay UM/UIM benefits accrues or ripens unless and until the injured insured obtains a binding judgment against the insurer, upon what basis does a trial court exercise subject matter jurisdiction for purposes of rendering such a judgment? "Stated differently, how is it possible for a trial court to obtain subject matter jurisdiction for purposes of adjudicating a UM/UIM claim if the contractual cause of action itself does not accrue until such time as the insured obtains a full and final adjudication of his claim?" *Blevins*, 2018 WL 5993445, at *44 n.23 (Birdwell, J., dissenting on denial of en banc reconsideration). This is the jurisdictional conundrum

---

(http://www.search.txcourts.gov/Case.aspx?cn=04-0514&coa=cossup) (last examined Nov. 14, 2020).

[15]State Farm appears to have been the first insurer to urge the supreme court to adopt the presentment analysis it eventually adopted by *Brainard*. Relying on the accrual analysis of *Sikes*, State Farm expressly argued that the establishment of legal entitlement to UM benefits was a condition precedent to the recovery of attorney's fees in *State Farm Mutual Automobile Insurance v. Whitehead*, 988 S.W.2d 744 (Tex. 1999). We take judicial notice of the briefing of the parties therein, none of which mentions *Arnold* or *Murray. See State Farm Mut. Auto. Ins. Co. v. Whitehead*, No. 97-0998 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=97-0998&coa=cossup) (last examined Nov. 14, 2020).

introduced by the authorization of a direct action by *Matlock* and not resolved by the presentment analysis of *Brainard.*

"A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514–15 (Tex. 1998) (op. on reh'g) (citing (1) *Murray*, 800 S.W.2d at 828 (holding a cause of action for breach of the duty of good faith and fair dealing accrues with the denial of coverage, not the date upon which a judgment resolves the coverage dispute); (2) *Celtic Life Ins. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994) (holding that statutory cause of action for mishandling or maladjustment of insurance claim under the insurance code accrues on the date the insurer first denies coverage); and, with disapproval on other grounds, (3) *Long v. State Farm Fire & Cas.*, 828 S.W.2d 125, 128 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding that a DTPA cause of action for wrongful denial of coverage accrues on the date of denial)), *superseded by statute on other grounds*, Tex. Fin. Code Ann. § 304.1045. By authorizing a judicial remedy in *Matlock*, the supreme court implicitly recognized that the cause of action to be adjudicated *against State Farm* had accrued at the time the Matlocks filed their direct action.

"[R]ipeness, like standing, is a threshold issue that implicates subject matter jurisdiction, and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented." *Waco ISD v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)).

"Under the ripeness doctrine, [the court] consider[s] whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Gibson*, 22 S.W.3d at 851–52 (quoting *Patterson*, 971 S.W.2d at 442). An insurer and insured cannot simply agree to allow the trial court to adjust the claim for them. *See Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943) ("Jurisdiction of the subject matter exists by operation of law only, and [it] cannot be conferred by consent or waiver."); *Morrow v. Corbin*, 62 S.W.2d 641, 649 (Tex. 1933) ("Jurisdiction over the subject-matter of litigation cannot be conferred by agreement."). Absent an accrued or ripened cause of action, any adjudication of a coverage dispute between an insurer and insured will result in an impermissible advisory opinion. *See Patterson*, 971 S.W.2d at 442 ("The constitutional roots of justiciability doctrines such as ripeness, as well as standing and mootness, lie in the prohibition on advisory opinions, which in turn stems from the separation of powers doctrine."). By authorizing a judicial remedy in *Matlock*, the supreme court implicitly recognized the cause of action to be adjudicated *against State Farm* had ripened sufficiently to permit the exercise of subject matter jurisdiction over the direct action brought by the Matlocks. The only question left open by *Matlock* was the nature of the cause of action, *ex delicto* or *ex contractu*?

As discussed in *Henson*, the injured insured possesses a negligence cause of action against the uninsured or underinsured motorist which accrued or ripened at the time of the underlying motor vehicle accident; she does not possess a negligence cause of action

44

against her insurer. *See* 17 S.W.3d at 653 ("Unlike the relationship between Henson and Contreras, which is that of injured party and tortfeasor, the relationship between Henson and the insurers is that of contracting parties. Consequently, their respective duties are established by the contract."). As a result, she may only obtain a binding and enforceable judgment on her negligence cause of action against the uninsured or underinsured motorist, not her insurer. *See id.* And although the injured insured's negligence cause of action accrues or ripens at the time of the accident, the logical implication of *Brainard* is that the contract cause of action neither accrues nor ripens until the injured insured obtains a binding judgment against the insurer *adjudicating the contract cause of action. See Patterson*, 971 S.W.2d at 443 ("A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass."). Based upon this discussion in *Henson*, therefore, the cause of action to be adjudicated between insured and insurer in a direct action authorized by *Matlock* is clearly contractual in nature.

Although the accrual or ripening of a cause of action for UM/UIM benefits has been addressed by the courts of appeals since *Henson*, their decisions do not address the jurisdictional conundrum created by *Henson* and *Brainard*. Instead, they assume that an insured can *plead* a ripe cause of action for UM/UIM benefits without a then-existing legal duty on the part of the insurer to pay benefits *imposed by the judgment sought by the pleading. See Hamilton*, 2020 WL 5494503, at *4–5 (holding that insured's pleading of a ripe cause of action for UIM benefits rendered deposition of insurer's corporate

45

representative permissible); *Perry*, 2019 WL 1723509, at *5–7 (rejecting State Farm's ripeness objection predicated upon absence of a judicial determination as a condition precedent for payment and holding that the insured's mere pleading of ripe cause of action for UIM benefits rendered deposition of its corporate representative permissible); *Bretado v. Nationwide Mut. Ins.*, No. 04-18-00014-CV, 2018 WL 6517405, at *2–3 (Tex. App.—San Antonio Dec. 12, 2018, no pet.) (mem. op.) (rejecting insured's attempt to avoid insurer's limitations defense to her breach of contract cause of action by arguing that, despite her having pleaded a ripe contractual cause of action, absent a judicial determination of liability and damages, her claim was not yet ripe); *State Farm Cty. Mut. Ins. Co. of Tex. v. Diaz-Moore*, No. 04-15-00766-CV, 2016 WL 6242842, at *1–2 (Tex. App.—San Antonio Oct. 26, 2016, no pet.) (mem. op.) (rejecting insurer's ripeness objection and holding that insured's pleading of ripe cause of action for UIM benefits supported default judgment against insurer); *In re Arcababa, Inc.*, No. 10-13-00097-CV, 2013 WL 5890109, at *3–6 (Tex. App.—Waco Oct. 31, 2013, orig. proceeding) (mem. op.) (holding that insured's invocation of her UM/UIM coverage without alleging any failure on the part of insurer to pay her claim failed to plead a ripened cause of action for UIM benefits and thereby rendered mandatory venue provision of the UM/UIM statute inapplicable and venue over her dram shop cause of action against the relator improper); *Reynolds*, 369 S.W.3d at 648 (holding that insured's pleading of wrongful failure and refusal of insurer to pay UIM benefits, including its denial of his demand for payment, was sufficient to establish trial court's subject matter

jurisdiction); *Alvarado v. Okla. Sur.*, 281 S.W.3d 38, 40–42 (Tex. App.—El Paso 2005, no pet.) (holding that insured's pleading of wrongful failure and refusal of insurer to pay UIM benefits was sufficient to establish trial court's subject matter jurisdiction when insurer failed to offer evidence that it had not denied the claim due to insured's failure to make demand for payment). *But see In re Britt*, 529 S.W.3d 93, 97 (Tex. App.—Texarkana 2016, orig. proceeding) (granting mandamus relief from order setting aside default judgment in direct action for UM benefits due to State Farm's failure to demonstrate meritorious limitations defense because cause of action accrued on the date of the claim's denial, citing *Murray*).[16]

A resolution of the conundrum, if possible, requires a reexamination of the coverage language of the policy at issue in *Matlock*, as well as a review of early decisional

---

[16]By way of contrast, three federal district courts have expressly held that, in the absence of an actionable breach of contract for the denial of UM/UIM benefits pending the establishment of a duty to pay such benefits via a judicial determination of liability and damages, the insured's contract claim for benefits is insufficiently ripe to justify the exercise of subject matter jurisdiction. *See Ibarra v. Allstate Fire & Cas. Ins.*, No. SA:20-CV-00280-JKP, 2020 WL 3259806, at *3 (W.D. Tex. June 16, 2020) (dismissing insured's breach of contract cause of action without prejudice for lack of subject matter jurisdiction, but proceeding on insured's request for declaratory relief under the Federal Declaratory Judgment Act); *Borg v. Metro. Lloyd's of Tex.*, No. W:12-CV-256, 2013 WL 12091651, at *2 (W.D. Tex. Feb. 21, 2013) (dismissing insured's breach of contract cause of action without prejudice for lack of subject matter jurisdiction); *Accardo v. Am. First Lloyds Ins.*, No. H-11-0008, 2012 WL 1576022, at *2–3 (S.D. Tex. May 3, 2012) (same). In so holding, all three decisions find that *Brainard* compels their conclusion that a breach of contract action for UM/UIM benefits does not ripen until the insured obtains a judicial determination of liability and damages, but none identify the accrued or ripened *contractual* cause of action whereby the insured can invoke the adjudicating court's subject matter jurisdiction.

antecedents of *Arnold* clarifying the nature of the direct action authorized, to understand the "legal entitlement as a condition precedent" premise of the *Henson* accrual analysis and the *Brainard* presentment analysis.

### F. *Matlock* and its progeny rejected the third-party liability analogy

The supreme court's authorization of a direct action in *Matlock* avoided a fatal flaw in the UM coverage originally mandated by the legislature. Despite providing for arbitration to resolve any dispute concerning the insured's legal entitlement to recover damages, the UM coverage set forth in the standard family automobile policy was, nevertheless, an unenforceable "agreement to agree"[17] because an executory agreement to arbitrate a future coverage dispute was not enforceable at the time, either by statute or at common law. *See generally Blevins*, 2018 WL 5993445, at *27–42 (Birdwell, J., dissenting on denial of en banc reconsideration) (discussing insured's inability to enforce UM arbitration provision of the Texas Family Automobile Policy, citing contemporaneous authorities).

As acknowledged by the supreme court in *Old American County Mutual Fire Insurance v. Sanchez*, the legislature incorporated the then-extant language in the standard family automobile policy promulgated by the State Board of Insurance when it

---

[17] *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." (quoting *Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000))).

mandated UM coverage in 1967, which necessarily included the "legally entitled to recover as damages" language.[18] *See* 149 S.W.3d 111, 118 (Tex. 2004) (holding that by employing the phrase "in the policy" in the statute, the legislature incorporated the standard policy); *Berry v. State Farm Mut. Auto. Ins.*, 9 S.W.3d 884, 892 (Tex. App.—Austin 2000, no pet.) (observing that the legislature is presumed to enact any statute modifying standard automobile liability coverage with complete knowledge of the terms and conditions of the promulgated policy). And the legal entitlement language of the standard family automobile policy in *Matlock* included the following proviso:

> provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

*See Matlock*, 446 S.W.2d at 84–85; *see also State Farm Mut. Auto. Ins. v. White*, 461 S.W.2d 476, 478 (Tex. App.—Tyler 1970, no writ) (quoting identical language).[19] Contrary to

---

[18]We take judicial notice of the *Matlock* policy contained as an exhibit in the clerk's record, with the quoted language to be found on page 5 of the policy. *See State Farm Mut. Auto. Ins. v. Matlock*, No. B-1809 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=B-1809&coa=cossup) (clerk's record) (last examined Nov. 14, 2020). The declarations page of the policy confirms that the policy was in force before the effective date of the legislative mandate.

[19]To effectuate the arbitration proviso, the *Matlock* policy included detailed provisions for arbitration and subrogation through a trust agreement that can be found on pages 6 and 7 of the policy. Those provisions apply only to the UM coverage provided by the policy.

We take further judicial notice that the earliest UM policy promulgated by the Board to be found in the supreme court's archive, circa 1963, is the State Farm policy

the supreme court's interpretation in *Brainard*, therefore, it appears that the phrase "legally entitled to recover as damages" does not mandate the rendition of a binding judgment as a condition precedent to the payment of a UM claim.[20]

By way of comparison, as a condition precedent for third-party liability coverage, the *Matlock* policy provided that no action would lie against State Farm "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant[,] and the company."[21] This is the exact language the supreme court held required the rendition of a judgment against the insured tortfeasor for the accrual of a third-party beneficiary cause of action. *See Murray*, 437 S.W.2d at 265 ("Under such a policy a third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured."). By expressly requiring a judgment for the payment of liability coverage benefits, while providing for the

---

in *State Farm Mutual Automobile Insurance v. Pan American Insurance*, 437 S.W.2d 542 (Tex. 1969), which includes the identical arbitration proviso. *See State Farm Mut. Auto. Ins. v. Pan Am. Ins.*, No. B-1184 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=B-1184&coa=cossup) (last examined Nov. 14, 2020).

[20]The reasoning of the original withdrawn opinion in *Matlock*, which analyzes this legal entitlement language in detail, is consistent with this conclusion. *See* Pierre R. Loiseaux, *Innocent Victims 1959*, 38 Tex. L. Rev. 154, 163–64 (1959) (observing UM coverage first approved by Insurance Commission in 1957, with the "[d]etermination of legal entitlement to damages against the uninsured . . . to be arrived at by agreement between the insured and the company or by arbitration").

[21]*See Matlock* policy, *supra* note 18, at 3.

payment of UM benefits through arbitration, the *Matlock* policy clearly distinguishes between the two types of coverage and presents a conflict with the "legal entitlement as a condition precedent" premise of *Brainard*.

Moreover, the supreme court subsequently rejected numerous attempts by UM insurers to treat the insured's first-party UM coverage as third-party liability coverage for the uninsured motorist. For example, in *Allstate Insurance v. Hunt*, the supreme court held that, although the insurer agreed to be bound by the judgment rendered in the insured's negligence cause of action against the uninsured motorist, the trial court did not abuse its discretion in prohibiting counsel for the insurer from acting as lead trial counsel for the uninsured motorist and from refusing to permit the insurer to withdraw its agreement to be so bound after notice of this prohibition. 469 S.W.2d 151, 152–55 (Tex. 1971). The court framed the issue in the following manner:

> A basic issue here presented is *whether a co-defendant insurance company shall be permitted to defend an uninsured motorist against its own insured in an attempt to prevent or limit recovery by its insured* after the insurance company has requested and been granted a separate trial. Allstate argues that notwithstanding the separate trial, it should also have been able, without the jury's knowing it was in the case, to defend the uninsured motorist because it has given consent to the suit and would be bound by the determination of liability and amount of damages in the suit between Hunt and Rose; or it should have been permitted to withdraw its consent to the suit and its agreement to be bound if it were not permitted to defend the uninsured motorist.

*Id.* at 152 (emphasis added).

Approving the detailed reasoning of the court of appeals concerning the inherent conflicts of interest created by treating UM coverage as third-party liability coverage for

51

the uninsured motorist, the court reaffirmed that "[t]he primary duty of the insurance company is to its insured." *Id.* Foreclosing any fiduciary relationship between Allstate and the uninsured motorist, the court affirmed the trial court's decision to deny Allstate leave to have its counsel represent the uninsured motorist in the trial of the underlying tort action, despite Allstate's having given written consent to be bound by the outcome pursuant to the provisions of its policy. *Id.* at 152–55. So, to the extent *Matlock* authorized a direct action against the insurer, it could not be one predicated upon a third-party liability coverage relationship between the UM insurer and the uninsured motorist.[22]

In *Employers Casualty v. Clark*, the supreme court next made clear that the cause of action to be adjudicated in a *Matlock* direct action was one for breach of contract, not negligence, further discrediting the treatment of UM coverage as third-party liability coverage for the uninsured motorist. *See* 491 S.W.2d 661, 662–63 (Tex. 1973). In *Clark*, the court addressed the question of whether the Clarks, in order to defeat the insurer's plea of privilege to be sued in another county, had merely to prove the existence of their UM coverage or, additionally, the insurer's breach thereof. *Id.* at 661–63. Focusing on the exception in the venue statute permitting the filing of a suit against a private

---

[22]Unfortunately, we cannot ascertain from *Hunt* the nature of the cause of action it intended to be the subject of the direct action authorized by *Matlock*. *Hunt*, 469 S.W.2d at 155 ("We see no conflict in this opinion and in the holding of this court in *State Farm Mutual Automobile Insurance Co. v. Matlock*, 462 S.W.2d 277 (Tex. 1970). If Hunt had sued Allstate directly, without filing a suit against Rose, he could recover against the insurer by proving his case.").

corporation in the plaintiff's county of residence "at the time the cause of action or a part thereof arose" if the defendant corporation had an agency or representative in the county, the court confirmed that the accrual of a cause of action in a contractual context required proof of both the contract *and its breach. See id.* at 662. Because the Clarks failed to present proof of the uninsured status of the other driver, they failed to prove a breach of the policy giving rise to a contractual cause of action against the insurer at the time of their residence in the county of suit. *Id.* at 662–63; *see also Commercial Standard Ins. v. Nunn,* 464 S.W.2d 415, 416–17 (Tex. App.—Texarkana 1971, writ dism'd) (affirming judgment overruling UM insurer's plea of privilege because insured resided in county where "an action to recover pecuniary damage accruing under the terms of an [u]ninsured motorist provision of an automobile insurance contract" "arose" at the time of the underlying motor vehicle accident).

Similarly, in *White*, the court of appeals affirmed the overruling of State Farm's plea of privilege in a UM case because, as a foreign corporation, the insurer was amenable to venue in the county of suit "where the cause of action or a part thereof accrued." 461 S.W.2d at 480 (citing former version of venue statute). In so holding, the court rejected State Farm's argument that the insured failed to establish the accrual of a breach of contract cause of action due to an absence of evidence that State Farm denied the claim:

> Under the terms of the policy [the insureds] were required to establish liability of the uninsured motorist and damages resulting therefrom. The proof offered by [the insureds] shows that liability as well

53

as the damages accrued in Gregg County. Therefore, we think it can be said that at least a part of the cause of action against [State Farm] upon the policy of insurance "accrued" in such county.

> [State Farm] contends that venue cannot be sustained under [the foreign corporation exception] because there is no proof showing that the insurance company refused to pay the damages. There [State Farm] says [the insured] failed to establish a breach of contract giving rise to a cause of action and there being no cause of action, a "part" of a cause of action could not have "accrued" in Gregg County. We are not impressed with this argument. In view of [State Farm]'s general denial denying any obligation under the contract [State Farm]'s argument appears to be frivolous and wholly without merit.

*See id.*; *see also Ford v. State Farm Mut. Auto. Ins.*, 550 S.W.2d 663, 666 (Tex. 1977) (holding that insurer's filing of an unconditional general denial of liability for UM benefits under its policy waived policy provision requiring insured to obtain its consent to settle with third party); *Ford*, 550 S.W.2d at 667 (Pope, J., dissenting) ("The majority has ruled that an insurer that files a general denial after it has been sued, thereby breaches its contract and waives conditions precedent as well as the exclusions expressed in a policy.").

Critically, the court of appeals in *White* expressly distinguished the insured's UM coverage from the liability coverage provided by the policy in holding the joinder of State Farm as a party defendant permissible under the rules of civil procedure:

> This is not a suit where the policy provides that the insurer "will not be liable" or "no suit" shall be brought until liability is established by judgment as was the case in *Grasso v. Cannon Ball Motor Freight Lines*, . . . 81 S.W.2d 482 [(Tex. [Comm'n Op.] 1935), *superseded by rule as stated in H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 24 (Tex. 1998)] and *Bluth v. Neeson*, . . . 94 S.W.2d 407 [(Tex. 1936)]. Rather this is a situation where the insurer has agreed by contract to become directly liable to the plaintiff in a tort action. In these circumstances, our rules allow that the plaintiff may properly join the insurer in the suit.

*See* 461 S.W.2d at 479 ("While in this instance the liability of the tort-feasor arises ex delicto while that of [State Farm] arises ex contractu, the liability of each grows out of the same transaction and is so intimately connected that the two should be joined to avoid a multiplicity of suits."). In so reasoning, *White* rejected any argument that the uninsured motorist was the "insured" for purposes of UM coverage, and thereby undermined any analogy to a third-party beneficiary claim.

In 1974, in *Franco v. Allstate Insurance*, the supreme court subsequently reaffirmed the contractual nature of the direct action authorized by *Matlock* holding that, for statute of limitations purposes, the cause of action was one "for debt where the indebtedness is evidenced by or founded upon any contract in writing." 505 S.W.2d 789, 790–91 & n.3, 793 (Tex. 1974) (quoting former Article 5527). Allstate had specifically urged the court to consider the cause of action pleaded by the Francos to be one arising in tort, not out of a debt, thereby requiring the filing of the direct action within two years of its accrual. *Id.* at 790–91. Rejecting this argument, the supreme court reasoned that "although ultimate recovery in this type of action depends upon proof of damages due to the tort of an uninsured third party, the cause of action against the insurer arises by reason of the written contract." *Id.* at 791–92.

Moreover, the court expressly rejected Allstate's assertion that the phrase "legally entitled to recover as damages" did not create a "debt" within the meaning of former Article 5527, observing that decisions from other jurisdictions had interpreted the

phrase not to require a "sum certain" in the form of a judgment of liability and damages against the uninsured motorist, but "to mean simply that the insured must be able to show fault on the part of the uninsured motorist and the extent of the resulting damages." *Id.* at 792. But the accrual of the cause of action for "debt" or "indebtedness" or "damages" under the UM policy would require an antecedent event, i.e., the insurer's wrongful refusal to pay the amount justly owed under the policy. *See Elder, Dempster & Co. v. St. Louis Sw. Ry. Co. of Tex.*, 154 S.W. 975, 977 (Tex. 1913) ("That 'actions for debt,' as used in said [limitations] statutes, include suits brought to recover money for the breach of a contract in writing, without regard for the technical distinction between debt and damages, is well settled."); *El Paso Nat'l Bank v. Fuchs*, 34 S.W. 206, 207 (Tex. 1896) ("In common parlance, the word 'debt' is sometimes used to denote any kind of a just demand, and has been differently defined, owing to the subject[ ]matter of the statutes in which it has been used; and while, ordinarily, it imports a sum of money arising upon a contract, express or implied, in its more general sense it means that which one person is bound to pay or to perform to another." (quoting *Barber v. City of E. Dall.*, 18 S.W. 438, 439 (Tex. 1892) (holding word "debts" includes a liability for damages resulting from the tortious acts of municipal officers in removing a private dwelling and tearing down a fence in preparing to take the land for a public street))); *Merriman v. Swift & Co.*, 204 S.W. 775, 776 (Tex. App.—Fort Worth 1918, writ ref'd) ("'Indebted,' in the dictionary, is defined as 'having contracted or incurred a debt.' 'Indebtedness, or debt, is whatever one owes, or in a purely technical sense is that for which an action of debt

will lie; a sum of money due by certain and express agreement.'" (quoting unavailable reference source)). If not, and accrual occurred with the rendition of judgment for an amount of damages conclusively established by jury verdict, then there would be no reason for the court to discount the need for a "sum certain" as part of its accrual analysis.

Additionally, because the court reaffirmed that the cause of action was contractual in nature, it could not have accrued only if and when the Francos successfully obtained a judgment against Allstate by way of their direct action. As the court of appeals set forth in its opinion, Allstate and the Francos stipulated to the following facts for purposes of limitations: (1) the underlying motor vehicle accident occurred on December 28, 1967; (2) the Francos' daughter died as a result of the accident on December 28, 1967; and (3) the Francos filed their direct action against Allstate in federal district court on September 11, 1970, only to refile it in state district court within 60 days of its dismissal for want of jurisdiction. *Franco v. Allstate Ins.*, 496 S.W.2d 150, 151 (Tex. App.—San Antonio 1973), *rev'd*, 505 S.W.2d 789 (Tex. 1974). Allstate subsequently moved for summary judgment due to the failure of the Francos to file their direct action within two years of the date of both the accident and the death of their daughter. *Id.*

While neither the opinion of the court of appeals in *Franco* nor the opinion of the supreme court disclosed a date, if any, that Allstate denied their claims for UM benefits, the accrual analysis of both opinions contemplated the accrual of their causes

of action on the date of the accident and the death of their daughter. Simply stated, if Allstate's duty to pay UM benefits to the Francos accrued or ripened only after the rendition of a judgment establishing the uninsured motorist's negligence and the amount of their damages, then neither the two- nor the four-year limitations period began to run until the rendition, and the entirety of the court's accrual analysis would have been meaningless. *Franco* clearly contemplated the accrual of their contract cause of action *before* they filed their direct action, *not after*:

> Since this suit is ex contractu rather than ex delicto, both as to the claim based upon the death of the Franco daughter and as to Franco's claim for personal injuries, it is governed by the contract statute of limitations. Neither claim was extinguished by the running of the two year limitations period applicable to tort actions. Hence, the four year statute of limitations . . . is applicable to both causes of action.

*Franco*, 505 S.W.2d at 793; *see also Madore v. Dairyland Cty. Mut. Ins.*, 696 S.W.2d 274, 276–77 (Tex. App.—Fort Worth 1985, no writ) (holding cause of action for UM benefits accrued for statute of limitations purposes on the date the insurer denied the injured insured's claim, not on the date of the underlying motor vehicle accident).

Following its decision in *Franco*, the supreme court provided further evidence, by administrative action, that it considered the direct action authorized by *Matlock* to involve a fully accrued and ripened contractual cause of action at the time of its filing. By its Order of July 22, 1975, the supreme court amended Rule 93 of the rules of civil procedure to include a verified pleading rule specific to direct actions for UM benefits:

> (p) In the trial of any case brought against an automobile insurance company by an insured under the provisions of an insurance policy in

58

force providing protection against uninsured motorists, an allegation that the insured has complied with all the terms of the policy as a condition precedent to bringing the suit shall be presumed to be true unless denied by verified pleadings which may be upon information and belief.

*See* 525–26 S.W.2d [Texas Cases] xliii, xlv (promulgated at Tex. R. Civ. P. 93(p)). Despite the legislature having later extended coverage to include underinsured motorists, this language remains the same today. *See* Tex. R. Civ. P. 93(15).

As observed in a Texas Bar Journal article published shortly after Rule 93(p) became effective on January 1, 1976, the purpose of the amendment was to resolve the uninsured status of the other driver at the time of the underlying accident unless the insurer placed this status in issue by verified denial. Quentin Keith, *Texas Rules of Civil Procedure—Comments on the 1975 Amendments*, 39 Tex. B.J. 129, 130 (Feb. 1976). The article referenced the supreme court's decisions in *Matlock*, *Members Mutual Insurance v. Tapp*, 469 S.W.2d 792 (Tex. 1971), and *Dairyland County Mutual Insurance Co. of Texas v. Roman*, 498 S.W.2d 154 (Tex. 1973), as having identified problems of some concern to the court. Keith, *1975 Amendments*, 39 Tex. B.J. at 130.

Obviously, in *Matlock*, the difficult burden of proving the "negative" of the other driver's uninsured status was an issue. *See* 462 S.W.2d at 278–79. Similarly, in *Tapp*, the supreme court held that, in view of the difficult problem of proving a negative, the insured was under the burden of proving the other driver's uninsured status by "no more than a convincing quantum of proof that she had made all reasonable efforts to ascertain that [the other driver] was uninsured, and that these efforts had proved

fruitless." 469 S.W.2d at 792–93. The court held she failed to do so, rejecting her argument that discovery procedures were inadequate to the task when the other driver was not a party to the direct action. *Id.* at 793. And in *Roman*, the supreme court held that, by failing to specifically deny that the minor insured provided written notice as a condition precedent for UM coverage, as required by Rule 54 of the rules of civil procedure, the insurer failed to preserve any error in "the trial court's refusal to submit an issue thereon or of [the minor insured's] failure to obtain a finding or otherwise establish that the condition was performed." 498 S.W.2d at 156–59.

Through the promulgation of Rule 93(p), therefore, the supreme court signaled that it considered the direct action authorized by *Matlock* to be a fully accrued and ripened contractual cause of action at the time of its filing. Indeed, *Roman* confirms that one of the purposes of requiring written notice as a condition precedent is to give the insurer a reasonable opportunity to investigate and evaluate the underlying motor vehicle accident giving rise to the claim:

> Here the notice condition is one provision of the contract that sets out the insurer's obligations to its insured, a contract voluntarily acquired by or for the minor plaintiff. It does not specify a definite period, and the time within which notice must be given is to be determined in the light of all the circumstances. The provision can be of benefit to the policyholder as well as to his detriment, because the investigation that is ordinarily made by an insurance company after receipt of timely notice may be of assistance to the insured in defending claims above the policy limits. Prompt notice of an accident is essential from the standpoint of the company, moreover, and it cannot be said that the provision is against public policy even where the insured is a minor.

*Id.* at 157–58; *see also Am. Teachers Life Ins. v. Brugette*, 728 S.W.2d 763, 764 (Tex. 1987) ("Proof of loss and notice of claim are conditions precedent to recovery on the policy."); *Emp'rs Cas. Co. v. Glens Falls Ins.*, 484 S.W.2d 570, 575 (Tex. 1972) ("The purpose of the requirement of timely written notice is to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witnesses so that it may adequately prepare to adjust or defend any claims that may be then or thereafter asserted against persons covered by its policy."). The insurer's contractual obligations to its insured, including its proper handling and adjustment of the UM claim, were clearly antecedent conditions to the accrual or ripening of the contract cause of action for UM benefits, and Rule 93(p) sought only to resolve any dispute concerning the uninsured status of the other driver, if possible, at the time the insured initiated a direct action for benefits.

If, as held by *Brainard*, the rendition of a judgment in the direct action itself was a condition precedent to the insurer's payment of UM benefits, then to what purpose did the supreme court promulgate Rule 93(p)? The rule required a UM insurer to file a verified denial of a condition precedent self-evident in *every* direct action, i.e., that the insured had yet to obtain a judgment for the payment of UM benefits *in the direct action she just filed.* Such an interpretation of the rule would be nonsensical; its promulgation clearly anticipated the accrual and ripening of a UM claim before the filing of a direct action, notwithstanding the presentment analysis of *Brainard.*

61

Finally, in *Members Mutual Insurance v. Hermann Hospital*, the supreme court expressly held that UM coverage is not "public liability insurance," the benefits or proceeds of which are subject to attachment pursuant to the hospital lien statute. 664 S.W.2d 325, 327 (Tex. 1984) ("A public liability policy does not protect the insured against injuries suffered by the insured himself in an accident; rather, it insures against damage claims for which the insured might become liable."). In so holding, the court specifically rejected the hospital's argument that the legislative mandate for UM coverage in standard automobile liability policies provided liability insurance for the uninsured motorist:

> In contrast to liability insurance, uninsured motorists coverage protects insureds against negligent, financially irresponsible motorists. Here, the uninsured motorists coverage did not protect the insured from liability for damages caused to others, thus it does not fit within the definition of liability insurance or public liability insurance. We therefore hold that the proceeds of uninsured motorists coverage are not subject to a [statutory] hospital lien[.]

> Hermann Hospital argues that uninsured motorists coverage must be a type of liability insurance because art. 5.06–1 of the Insurance Code mandates that uninsured motorists coverage be provided in every liability insurance policy.[23] We disagree. The inclusion of other coverages within

---

[23]Anticipating the third-party beneficiary analysis of *Sikes*, and similarly citing *Greene* for authority, the hospital had argued that UM coverage "is a substitute for and takes the place of the lack of liability insurance coverage of the negligent, financially irresponsible party" before asking rhetorically, "Why should the handling of 'UM' claims be substantially different from handling third-party claims?" To clarify that this argument was indeed rejected by the supreme court, we take judicial notice of the briefing of the parties. *See Members Mut. Ins. v. Hermann Hosp.*, No. C-2581 (Tex.) (http://www.search.txcourts.gov/Case.aspx?cn=C-2581&coa=cossup) (last examined Nov. 14, 2020).

> a liability insurance policy does not compel the conclusion that the other coverages are also liability insurance.

*Id.* at 327–28 (citations omitted).

Nevertheless, despite almost two decades of jurisprudence rejecting a third-party liability interpretation of UM coverage, the accrual analysis of *Arnold*—and in particular the supreme court's choice of the date of accrual as being the date of the rendition of the binding judgment for UM benefits—did not clarify that a direct action adjudicated a fully accrued and ripened breach of contract cause of action, opting instead to adopt the accrual analysis for a *Stowers* cause of action, which similarly treated UM/UIM coverage as third-party liability coverage for the uninsured or underinsured motorist.

## G. *Arnold* adopted the accrual analysis for a *Stowers* claim

In *Arnold*, the supreme court recognized that an insurer owed its insured a common law duty of good faith and fair dealing when handling and adjusting a claim under its UM coverage. 725 S.W.2d at 167. Although the mishandling and maladjustment made the subject of this duty necessarily occurred *before* the filing of the direct action authorized by *Matlock*, the court held that the cause of action itself did not accrue until *after* the judgment obtained thereby became final. *See id.* at 168. In so holding, the court adopted the accrual analysis for a cause of action arising from third-

party liability coverage predicated upon *G.A. Stowers Furniture Co. v. American Indemnity*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved). *Arnold*, 725 S.W.2d at 168.

In June 1974, Arnold suffered a severe injury when a car driven by an uninsured motorist struck his motorcycle. *Id.* at 166. Insured by National under a policy that included UM coverage, "Arnold made timely demand for payments up to the [$10,000] limit and an independent insurance adjusting firm recommended, *within six months following the date of the accident*, that [National] pay the entire policy limit to Arnold. [National] refused to pay although it [was] not clear when it specifically denied the claim." *Id.* (emphasis added).

Arnold sued both the uninsured motorist and National and, in December 1977, obtained a judgment against both defendants "for approximately $17,975." *Id.* After National paid him the $10,000 policy limit, Arnold filed a second lawsuit against National on December 27, 1978, "alleging various statutory causes of action and a common law cause of action for [National]'s breach of its duty of good faith and fair dealing in its handling of his claim." *Id.* The trial court eventually granted National a summary judgment on all claims, which the court of appeals upheld on appeal. *Id.*

The supreme court subsequently reversed the summary judgment, recognizing for the first time a common law duty on the part of an insurer to handle and adjust a policy claim fairly and in good faith:

> A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer

64

> to determine whether there is any reasonable basis for the denial or delay. Arnold pleaded and produced sufficient summary judgment proof to raise an issue of material fact that [National] *had no reasonable basis for its refusal to pay his uninsured motorist claim and with actual knowledge of that, forced him to a trial on the accident before it would pay the claim.*

*Id.* at 167 (emphasis added). In recognizing the duty, the court emphasized that, without its imposition, insurers could arbitrarily deny UM coverage or delay payment of a UM claim—due to the disparity of bargaining power and the insurer's exclusive control over the handling and adjustment of the claim through its investigation, evaluation, and disposition—"with no more penalty than interest on the [just] amount owed." *See id.*

Critically, as the italicized language above demonstrates, the actionable breach the court described was National's forcing Arnold to file and prosecute his *Matlock* direct action to judgment when there was no reasonable basis for denying or delaying payment of his UM benefits. *See id.* Observing that the summary judgment evidence included an admission of fault by the uninsured motorist, a recommendation by an independent adjusting firm that National pay Arnold's claim, and a failure on the part of National to investigate his alleged contributory negligence, all of which occurred before Arnold filed his direct action, the court concluded "[a]n issue of fact was raised as to [National]'s reasonableness in failing to settle the claim *and forcing Arnold to trial.*" *Id.* at 166–67 (emphasis added). And the court expressly observed "that exemplary and mental anguish damages are recoverable" for such bad faith mishandling and maladjustment of a UM claim. *See id.* at 168.

Because National had obtained summary judgment on the alternative ground of limitations, the supreme court conducted an accrual analysis to determine whether Arnold's newly recognized cause of action was nevertheless barred by statute:

> The court of appeals held that all of Arnold's causes of action including his good faith and fair dealing claim were barred by both the two-year (tort) and four-year (contract) statutes of limitations. This was based on that court's reasoning that Arnold's rights were invaded at the time his claim was rejected.
>
> Arnold argues that as in "Stowers" cases the statute of limitations should not begin to run until judgment in the underlying cause becomes final. *See Linkenhoger v. Am*[.] *Fid*[.] *& Cas*[.], . . . 260 S.W.2d 884 ([Tex.] 1953). We agree with the reasoning in *Linkenhoger* and hold that the statute of limitations does not begin to run on a good faith and fair dealing claim until the underlying insurance contract claims are finally resolved. *See also* [*Md*.] *Am*[.] *Gen*[.] *Ins*[.] *v. Blackmon*, 639 S.W.2d 455 (Tex. 1982) [(orig. proceeding)]. Thus, Arnold's cause of action for breach of the duty of good faith and fair dealing is not barred by the applicable two-year statute of limitations governing actions for personal injury.

*Id.* at 168 (statutory citations and footnote omitted).

*Arnold* and *Brainard* are consistent in their treatment of first-party UM/UIM coverage as third-party liability coverage for the uninsured or underinsured motorist. But where *Arnold* holds actionable the denial or delay of payment of benefits when there was no reasonable basis for doing so before the insured filed her direct action, *Brainard* forecloses any duty to pay unless and until the insured files and successfully prosecutes a direct action to a judgment for benefits. The consistency of these decisions results solely from *Arnold*'s adoption of the *Stowers*-based reasoning of *Linkenhoger*.

A *Stowers* cause of action arises when an automobile liability insurer negligently fails to settle a third-party liability claim against its insured within policy limits of its coverage. *See* 15 S.W.2d at 547.

> To prove a *Stowers* claim, the insured must establish that (1) the claim is within the scope of coverage; (2) a demand was made that was within policy limits; and (3) the demand was such that an ordinary, prudent insurer would have accepted it, considering the likelihood and degree of the insured's potential exposure to an excess judgment.

*Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 395–96 (Tex. 2016).

In *Linkenhoger v. American Fidelity & Casualty*, the supreme court held that a *Stowers* cause of action does not accrue against the insurer until a judgment of liability and damages in the underlying negligence action becomes final against its insured. 260 S.W.2d 884, 887 (Tex. 1953), *overruled on other grounds by Hernandez v. Great Am. Ins.*, 464 S.W.2d 91, 95 (Tex. 1971), *and by Street v. Second Ct. of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) (orig. proceeding). Despite the underlying motor vehicle accident having occurred on November 22, 1947, *see Linkenhoger v. Gilbert*, 223 S.W.2d 308, 308 (Tex. App.—San Antonio 1949, writ ref'd n.r.e.), and a judgment in excess of policy limits having been rendered in the underlying negligence action on October 21, 1948, *see Am. Fid. & Cas. v. Linkenhoger*, 257 S.W.2d 718, 718 (Tex. App.—Amarillo 1953), *rev'd*, 260 S.W.2d at 887, the supreme court held that the insured's *Stowers* cause of action did not accrue until the judgment became final with the refusal of its writ, no reversible error, on September 20, 1949. *See Linkenhogen*, 260 S.W.2d at 885–87. In so holding, the court concluded that, although the wrongful refusal to settle within policy limits occurred

before the rendition of the judgment, the insurer did not become contractually obligated to pay the judgment until the judgment became final and the insured paid the portion in excess of policy limits. *See id.* The court subsequently modified this ruling in *Street* to consider the judgment final and the cause of action accrued if the judgment "disposes of all issues and parties in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded." 756 S.W.2d at 301.

Summarizing, although *Stowers* neither creates nor extends automobile liability insurance beyond policy limits, it recognizes a negligence cause of action against the insurer for mishandling the third-party liability claim that effectively indemnifies the insured for any judgment in excess of policy limits. By analogy, *Arnold* treats first-party UM coverage as third-party liability coverage for the uninsured or underinsured motorist by recognizing a bad faith cause of action against the insurer for the mishandling and maladjustment of the insured's third-party liability claim against the uninsured or underinsured motorist. The *Stowers* cause of action accrued only when a judgment established the negligence of the insurer in failing to reasonably settle a third-party liability claim within policy limits; the *Arnold* cause of action accrued only when a judgment established the bad faith of the insurer in failing to reasonably handle and adjust the first-party UM/UIM claim made the subject of the insured's direct action.

The accrual analysis of *Henson* and the presentment analysis of *Brainard* are thereby completely consistent with the original accrual analysis of *Arnold.*

**H.**     *Murray* **modified** *Arnold* **by expressly rejecting the** *Stowers* **analogy**

The supreme court subsequently modified *Arnold* by holding in *Murray* that a common law bad faith cause of action accrues before the filing of the direct action against the insurer, on the date of the insurer's denial of the underlying claim for UM/UIM benefits, not when the rendition of a judgment finally resolves the direct action against the insurer:

> Our decision today modifies the limitations holding in *Arnold* because in retrospect it cannot withstand critical scrutiny. In *Arnold*, a motorcyclist, Arnold, was injured in an accident involving an uninsured driver. Arnold was insured by National . . . under a policy that included "uninsured motorist" protection up to $10,000. Although no specific date is known, denial of coverage occurred no later than June 1974, because in that month, Arnold sued both National . . . and the uninsured motorist. Evidence before the trial court showed that National . . . was relying on the opinion of an inexperienced lawyer and did not conduct an investigation to determine the merits of the claim. Arnold obtained a favorable judgment in excess of the policy limit in December 1977. One year later, in December 1978, Arnold filed his good faith claim against National . . . . This was over four years after denial. We held, nevertheless, that the two year statute of limitations did not bar this claim. Because Arnold had filed the initial or "underlying" suit to determine coverage, we analogized to *Linkenhoger v. American Fidelity & Casualty Co.*, 152 Tex. 534, 260 S.W.2d 884 (Tex. 1953), *overruled in part on other grounds in Street*, 756 S.W.2d at 301, *and in Hernandez*[,] 464 S.W.2d [at] 95[,] to determine that limitations did not run until Arnold's underlying contract claims were finally resolved. Arnold's contract claim was resolved with a favorable judgment in December 1977. His good faith claim, filed one year later, was therefore held to be timely.

> Our limitations holding in *Arnold* is not consistent with the rule that limitations commences at the time facts come into existence which authorize a claimant to seek a judicial remedy. *Robinson*[ *v. Weaver*], 550 S.W.2d [18,] 19 [(Tex. 1977)]; *Moreno*[ *v. Sterling Drug, Inc.*], 787 S.W.2d [348,] 357 [(Tex. 1990)]; *Linkenhoger*, 260 S.W.2d at 886. In *Arnold*, it is not clear when the facts indicating a breach of the duty of good faith and fair

dealing came to light. In the instant case, however, the insured had sufficient facts to seek a judicial remedy on the date that coverage was denied.

Moreover, *Arnold* incorrectly analogized to the reasoning used in *Linkenhoger*, which was a *Stowers* case. The injury producing event in a *Stowers* third party case is not the same as it is in a first party case. A *Stowers* third party claim accrues when the insurer unreasonably fails to settle a claim against the insured within policy limits. The injury producing event is the underlying judgment in excess of policy limits. *Linkenhoger*, 260 S.W.2d at 887. A first party claim, such as *Arnold* and this case, accrues when an insurer unreasonably fails to pay an insured under the policy. The injury producing event is the denial of coverage. *See* Note, *Arnold v. National County Mutual Fire Ins. Co.: Texas Adopts First-Party Bad Faith*, 39 Baylor L. Rev. 835, 853–854 (1987). *Limitations on a first party claim appropriately begins to run at denial, not the date the separate suit to determine coverage under the contract is resolved.*

*Murray*, 800 S.W.2d at 829 (emphasis added) (footnote omitted); *see also Webster v. Allstate Ins.*, 833 S.W.2d 747, 750 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("Causes of action for breach of the duty of good faith and fair dealing and for breach of the uninsured motorist provisions of an insurance policy accrue and the statute of limitations begins to run on the date the insurance company denies the claim.").

In this manner, *Murray* reconciled *Arnold* with *Franco* and confirmed that the direct action authorized by *Matlock* was for breach of contract due to the wrongful denial of the insured's UM/UIM claim before the initiation of the direct action. *See Nationwide Mut. Ins. v. Shilling*, 227 A.3d 171, 184 & n.15 (Md. 2020) ("Jurisdictions holding that the statute of limitations in an uninsured or underinsured motorist claim begins to run upon the insurer's breach of the insurance contract—i.e., denial of uninsured or underinsured motorist benefits—include Alaska, Arizona, Arkansas,

70

California, Delaware, Idaho, Iowa, Kansas, Maine, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, Oklahoma, Oregon, Rhode Island, Texas, Washington, and West Virginia."). And just as a "legal entitlement as a condition precedent" interpretation of *Matlock* would render the "sum certain" discussion of *Franco* nonsensical, the "reasonably clear" element for bad faith would make no sense if a binding judgment of liability is a necessary predicate for payment of a claim. Stated differently, if a judgment *conclusive as to both liability and the amount of damages* is a condition precedent to payment of a UM/UIM claim, then why would the supreme court reject a "sum certain" requirement for limitations accrual in *Franco* and impose a "reasonable handling and adjustment" standard for bad faith in *Arnold*?

## I.     *Arnold*, as modified by *Murray*, and *Brainard* appear to conflict

Given that the common law duty of good faith and fair dealing authorized by *Arnold* is subject to actionable breach when an insurer unreasonably denies or delays payment of a UM/UIM claim and thereby forces the insured to file and successfully prosecute a direct action to judgment under *Matlock*, and given *Murray* confirmed the breach of contract cause of action accrued when the insurer denied the claim, thereby compelling the direct action, the claims handling and adjustment made actionable by *Arnold* clearly occurs before the initiation and adjudication of a direct action for benefits. Yet, the mere presentment of a UM/UIM claim according to *Brainard* requires the insured to successfully prosecute a direct action to final judgment against the insurer.

71

Thus, it is difficult to reconcile *Arnold*, as modified by *Murray*, and *Brainard*.[24] *See generally*

---

[24]Only one of our sister courts has even considered the possibility of a conflict between these two lines of precedent, but it did so without reference to either *Arnold* or *Murray*. In *Allstate Insurance v. Jordan*, the Texarkana Court of Appeals concluded that a contract cause of action for UIM benefits could accrue and be prosecuted to a binding judgment against an insurer without the insurer ever having breached the insurance contract:

> In UIM cases, there is a significant difference between the date of accrual of a cause of action for limitations purposes and the date of breach. Although the breach cannot be established until after the liability and damages issues have been established, neither *Brainard* nor *Henson*, which addressed calculation of interest, stand for the proposition that the UIM cause of action does not accrue until after the liability and damages issues have been established.

503 S.W.3d 450, 455 n.7 (Tex. App.—Texarkana 2016, no pet.). In distinguishing the dates of accrual and breach, the court confirmed that "an insured's cause of action for uninsured motorist coverage accrues and the statute of limitations begins to run on the date the insurance company denies the claim." *Id.* (quoting *De Bell v. Ohio Cas. Grp. of Ins. Cos.*, No. 14-96-00337-CV, 1996 WL 671258, at *2 (Tex. App.—Houston [14th Dist.] Nov. 21, 1996, no writ)).

*Jordan* did not explain how the contract cause of action could accrue upon the denial of the insured's claim for limitations purposes without the denial itself constituting an actionable breach of contract for jurisdictional purposes. *See id.* In fact, the insurer had argued that a declaratory judgment was an inappropriate mechanism for determining the issue of legal entitlement because the insured possessed a breach of contract cause of action for UIM benefits. *See id.* at 455 ("Based on *Brainard*, Allstate argues that the proper cause of action for recovery of UIM benefits is breach of contract.").

Observing that *Brainard* effectively foreclosed a breach of contract cause of action to the insured, the court held the legal entitlement issue to be a justiciable controversy subject to resolution by declaratory judgment:

> Thus, *Brainard* states that a plaintiff seeking to obtain UIM benefits must demonstrate the existence of a duty or obligation that the opposing party has failed to meet, *but does not clarify what causes of action may be brought in order*

Anna Williams, *Are You in Good Hands? Whether Bad Faith Actions for Wrongful Denials of Uninsured and Underinsured Motorist Claims Still Exist in Texas*, 65 Baylor L. Rev. 1086, 1095–1104 (2013) (questioning the continued viability of *Arnold* after *Brainard*).

### J. *Bryant* and *Cook* do not attempt to reconcile *Brainard* and *Arnold*

State Farm and Mentzer primarily rely on two conflicting decisions, neither of which address the apparent conflict thus described. Nor do they resolve the jurisdictional conundrum identified.

In *Bryant v. Progressive County Mutual Insurance*, cited by State Farm in support of mandamus relief, the Dallas Court of Appeals extended the presentment analysis of *Brainard* to its logical conclusion, literally holding that, not only was liability for the claim not reasonably clear until the trial court rendered a judgment of liability and damages, but also that the insurer owed no contractual obligation to independently handle or adjust the claim *because the trial of the direct action constituted its investigation*. No. 05-17-01023-CV, 2018 WL 6521853, at *5–6 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.)

---

*to settle the liability and damages issues in the UIM litigation context*. We find nothing in *Brainard* precludes the use of a declaratory judgment when establishing prerequisites to recovery in a UIM benefits case.

*Id.* at 456 (emphasis added) (footnote omitted). "[D]ue to the unique procedure of a UIM case, the duty of an insurance company to pay UIM benefits does not arise until liability is established. Until that time, no remedy for breach of contract against the insurance company is actually enforceable." *Id.* Again, absent from the court's reasoning is any explanation of how the contract cause of action could accrue for limitations purposes upon the denial of the claim without the denial constituting an actionable breach of contract.

("Because the trial was the investigation, appellees conclusively established they did not fail to conduct a reasonable investigation.") (citing *Weir v. Twin City Fire Ins.*, 622 F. Supp. 2d 483, 486 (S.D. Tex. 2009) ("Twin City cannot be guilty of not performing a proper investigation of his UIM claim because it is the trial of the UIM claim, at which it will be determined who was at fault and the amount of damages, that constitutes the investigation.")). Indeed, the court of appeals further held that, because the trial of the insured's direct action alleviated the insurer of any contractual obligation to independently handle or adjust the UM claim, any and all written discovery inquiring into the possible mishandling and maladjustment of the claim was not relevant to the insured's extracontractual liability causes of action. *See id.* at *10–11 ("[N]one of the discovery Bryant sought in the requests for production and admissions and the interrogatories was relevant to any of the issues in the motion for summary judgment.").

A more fitting example of the jurisdictional conundrum created by treating first-party UM/UIM coverage for the insured as third-party liability coverage for the uninsured or underinsured motorist is not possible. If the insurer owed no contractual duty to the insured to independently handle or adjust a first-party claim arising from the stipulated negligence of an uninsured motorist, *see id.* at *1, let alone any duty to pay the insured benefits before rendition of the judgment, on what basis did the trial court exercise subject matter jurisdiction to conduct such a judicial adjustment of the claim? What was the concrete injury caused by the insurer's performance (or lack thereof) under the policy? The negligence cause of action accrued against the uninsured

74

motorist, not the insurer. *See Henson*, 17 S.W.3d at 653 ("Unlike the relationship between Henson and Contreras, which is that of injured party and tortfeasor, the relationship between Henson and the insurers is that of contracting parties. Consequently, their respective duties are established by the contract."). And if rendition of a judgment in the direct action is a condition precedent to any contractual liability for the insured's UM claim, there is no duty to perform, no breach of contract, no concrete injury attributable to the insurer at the time the insured initiates his direct action, and thus no subject matter jurisdiction for the trial court to conduct its judicial adjustment.[25] *See Gibson*, 22 S.W.3d at 851–52.

Moreover, *Bryant* interprets *Brainard* to turn first-party UM coverage into *wasting* third-party liability coverage, a form of coverage antithetical to the entire purpose of UM/UIM coverage. *Compare Westchester Fire Ins. v. Admiral Ins.*, 152 S.W.3d 172, 192 & n.10 (Tex. App.—Fort Worth 2004, pet. denied) (en banc op. on reh'g) (describing a "burning" or "eroding" or "wasting" third-party liability policy as one "in which the policy limits are diminished by defense costs and expenses"), *with Stracener v. USAA*, 777 S.W.2d 378, 382 (Tex. 1989) (acknowledging strong public policy supporting

---

[25]In *Weber v. Progressive County Mutual Insurance*, the Dallas Court of Appeals previously interpreted *Brainard* to foreclose *any* contract cause of action for UIM benefits whatsoever, including a direct action authorized by *Matlock*, by affirming a dismissal with prejudice in response to special exceptions controverting the condition precedent of a judicial determination of liability and damages. No. 05-17-00163-CV, 2018 WL 564001, at *3 (Tex. App.—Dallas Jan. 26, 2018, pet. denied) (mem. op.). *Weber* thus begged the question of how an insured can obtain such a judgment if the judgment itself is a condition precedent to its own rendition.

legislative mandate of UM/UIM coverage to protect conscientious motorists from "financial loss caused by negligent financially irresponsible motorists" (quoting Act of Oct. 1, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449) (codified at Tex. Ins. Code art. 5.06–1)); *see also Allstate Fire & Cas. Ins. v. Inclan*, No. 13-19-00026-CV, 2020 WL 373061, at *2 (Tex. App.—Corpus Christi–Edinburg Jan. 23, 2020, pet. filed) (mem. op.) ("To protect responsible motorists from financial loss when they are involved in car wrecks with uninsured or underinsured motorists (UM/UIM), Texas law requires automobile insurers to include UM/UIM coverage in their policies unless their insureds' reject that coverage in writing." (quoting *Irwin*, 606 S.W.3d at 776–77)). "In this manner, actual UM/UIM insureds incredibly become third party beneficiaries to their own policies, despite paying first party premiums, and do so only after incurring an undisclosed and unrecoverable litigation surcharge in the form of attorney's fees and legal expenses above and beyond the premium paid." *Blevins*, 2018 WL 5993445, at *45 (Birdwell, J., dissenting on denial of en banc reconsideration).

Unfortunately, the phrase "litigation surcharge" is not an exaggeration. Quite literally, the insured reduces her available coverage with every dollar of legal fees and expenses incurred while the trial and appellate courts judicially adjust her claim over the course of potentially years of litigation and appeals. For example, and no doubt in reliance upon *Brainard* and *Boyte*, the UM/UIM coverage in the standard automobile liability policy most recently approved by the Texas Department of Insurance for State

76

Farm expressly provides for the handling and adjustment of any claim *by adjudication through trial and appeal*:

**Insuring Agreement**

*We* will pay compensatory damages for *bodily injury* or *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the ownership, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle. If *we* and *you* do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on *us*.

. . . .

**Deciding Fault and Amount**

1. a. The *insured* and *we* must agree to the answers to the following two questions:

   (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

   (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

   b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

   (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

   (a) *us*;

   (b) the owner and driver of the *uninsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

(c) any other party or parties who may be legally liable for the *insured's* damages;

(2) consent to a jury trial if requested by *us*;

(3) agree that *we* may contest the issues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

*See* State Farm Personal Car Policy (Form 9843A), at 23–24 (https://compare.opic.texas.gov/storage/fileuploads/StateFarmPCP2017.pdf) (last visited Nov. 2, 2020).[26] Because *Henson* and *Brainard* expressly foreclose the recovery of

---

[26]By way of contrast, the *Matlock* policy contemplated a "judicial adjustment" in only one scenario, i.e., a written agreement of the insurer to be bound by a judgment of liability and damages entered in favor of the insured against the uninsured motorist:

> No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

*See Matlock* policy, note 18 *supra*, at 5.

Indeed, the trust agreement between the parties gave the insurer the exclusive right to designate legal counsel for the insured to file an action against the uninsured motorist to recoup its payment of benefits under the policy, as well as the right to reimbursement of any attorney's fees incurred thereby:

> [I]f requested in writing by the company, such person shall take, through any representative designated by the company, such action as may be necessary or appropriate to recover such payment as damages from such other person or organization, such action to be taken in the name of such

any contractual prejudgment interest or statutory attorney's fees for a successful judicial adjustment of a UM/UIM claim, and there is nothing in the policy that contemplates the insured ever recouping any of the fees and expenses incurred thereby, an insured's ability to obtain full policy benefits for bodily injury depends solely upon the gratuitous good faith of the insurer in foregoing the claim's judicial adjustment. *But cf. Inclan*, 2020 WL 373061, at *2–3 (holding that the UDJA is an appropriate vehicle for obtaining the

---

> person, in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs[,] and attorneys' fees incurred by it in connection therewith[.]

*See id.* at 6. As a result, the only "judicial adjustment" of a UM claim contemplated by the policy in *Matlock* was an action against the uninsured motorist in which the interests of the insured and the insurer were in complete alignment.

It should be noted that judicial determination language was eventually added to the standard arbitration proviso after *Matlock*. *See Ford*, 550 S.W.2d at 666 ("Awaiting payment, the policy provides how State Farm may determine by agreement, arbitration, or judicial process any issues affecting the claimant's entitlement to payment."). We take judicial notice of the State Farm policy contained as an exhibit in the clerk's record in *Ford*, with the following quoted language to be found on page 7 of the policy:

> provided, for the purpose of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, may be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration in accordance with the arbitration provision of this policy, or by judicial determination.

*See Ford v. State Farm Mut. Auto. Ins.*, No. B-6135 (Tex.) (http://www.search.txcourts. gov/Case.aspx?cn=B-6135&coa=cossup) (clerk's record) (last examined Nov. 14, 2020). As with the *Matlock* policy, however, the only judicial determination contemplated by this language was a "judgment against any person or organization alleged to be legally responsible for the bodily injury . . . entered pursuant to an action prosecuted by the insured with the written consent of the company." *See id.*

judicial determination required for payment of UM/UIM benefits and thereby authorizing insured to recover attorney's fees incurred in obtaining declaratory judgment); *Irwin*, 606 S.W.3d at 780 (same); *Jordan*, 503 S.W.3d at 453–57 (holding that UDJA is appropriate vehicle but rejecting its authority for recovery of attorney's fees).

Following the analysis and holding in *Bryant* would mean that *Brainard*, by treating first-party UM/UIM coverage as third-party liability coverage for the uninsured or underinsured motorist, absolved the insurer of any contractual obligation to handle or adjust the claim reasonably, in direct opposition to *Arnold*, as modified by *Murray*. All that is required of the insurer under the *Bryant* interpretation is the filing of a general denial. Not surprisingly, *Bryant* makes no mention of *Arnold* or *Murray*.

By way of contrast, and cited by Mentzer in opposition to mandamus relief, in *State Farm Mutual Automobile Ass'n v. Cook*, the San Antonio Court of Appeals expressly rejected the judicial adjustment analysis of *Bryant*, holding that "an insurer can act in bad faith by failing to reasonably investigate or delaying payment on a claim for uninsured motorist benefits until after the insured obtains a judgment establishing the liability and uninsured status of the other motorist." 591 S.W.3d 677, 683 (Tex. App.—San Antonio 2019, no pet.). In so holding, the court found persuasive the reasoning of the Fifth Circuit in *Hamburger v. State Farm Mutual Automobile Insurance*, 361 F.3d 875 (5th Cir. 2004). *Cook*, 591 S.W.3d at 681–82.

In *Hamburger*, the Fifth Circuit rejected the identical argument made by State Farm in *Cook* and in this proceeding, i.e., that an insurer's liability for UIM benefits

cannot become reasonably clear for purposes of demonstrating a breach of the common law duty of good faith and fair dealing unless and until the insured obtains a judgment establishing the liability of the underinsured motorist and the amount of damages sustained by the insured:

> There are no Texas cases which have squarely held that liability can never be reasonably clear before there is a court determination of proximately caused damages. On the other hand, in . . . *Boyte*, the Texas Supreme Court held that an insured does not have a bad faith cause of action against an insurer for the insurer's failure to attempt a fair settlement of a UIM claim after there is a judgment against the insurer, at which time there are no longer duties of good faith and the relationship becomes one of judgment debtor and creditor. . . . *Boyte*, 80 S.W.3d [at] 549 . . . . If State Farm's position were adopted, an insured such as Hamburger could never successfully assert a bad faith claim against his insurer for failing to attempt a fair settlement of a UIM claim: pre-judgment, liability would not be clear under *Giles*, [950 S.W.2d at 55,] and post-judgment, such an action would be barred under *Boyte*. Absent a more clear indication from Texas courts that liability cannot be reasonably clear under *Giles* until the insured is found in a legal proceeding to be entitled to recover, we will not adopt this interpretation of Texas law.

361 F.3d at 880–81; *see also James v. Allstate Fire & Cas. Ins.*, No. 3:20-CV-0786-K, 2020 WL 4338953, at *3–7 (N.D. Tex. July 28, 2020) (relying on *Hamburger*, holding that a judicial determination of liability and damages is not a condition precedent for a statutory bad faith cause of action because insurer's contractual liability can be "reasonably clear" without such a determination).

*Cook* quoted and agreed with this analysis, concluding that, because the presentment analysis of *Brainard* did not expressly foreclose a bad faith cause of action, such a cause of action continues to exist. 591 S.W.3d at 681–82. The court reasoned

81

that when a reasonable investigation of a claim reveals overwhelming evidence of an uninsured or underinsured motorist's fault, a judicial determination of liability and damages is a mere formality and an insurer's insistence on this formality before paying a claim is evidence of bad faith. *See id.* at 682 (citing *Accardo*, 2012 WL 1576022, at *5). Although this conclusion is consistent with *Arnold*, as modified by *Murray*, *Cook* did not explain how these decisions could be reconciled with *Brainard*.

### K.     Stare decisis confirms *Arnold*, as modified by *Murray*, controls

If neither *Henson* nor *Brainard* addressed the jurisdictional conundrum set forth above, on what basis can they be said to have overruled the accrual analysis of *Arnold*, as modified by *Murray*? Because the accrual or ripening of a cause of action is a question of law, we must look to the doctrine of stare decisis to resolve the conflict, if possible. *See Moreno*, 787 S.W.2d at 351.

In *Swilley v. McCain*, the supreme court set forth the parameters of the doctrine of stare decisis:

> As originally conceived and as generally applied, the doctrine of stare decisis governs only the determination of questions of law and its observance does not depend upon identity of parties. After a principle, rule or proposition of law has been squarely decided by the Supreme Court, or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties. As a general rule the determination of a disputed issue of fact is not conclusive, under the doctrine of stare decisis, when the same issue later arises in another case between persons who are strangers to the record in the first suit.

374 S.W.2d 871, 875 (Tex. 1964).

In *Lubbock County v. Trammel's Lubbock Bail Bonds*, the supreme court denied the intermediate courts the authority to disregard its precedent concerning when a cause of action accrues:

> It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with this Court. Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent.

80 S.W.3d 580, 585 (Tex. 2002) (citations omitted) (holding that presentment statute for bail bonds services charges does not delay accrual of cause of action against county for reimbursement of unauthorized charges); *see also Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 528 & n.45 (Tex. 2019) (admonishing lower court to leave the abrogation of established arbitration precedent to the supreme court). Only the supreme court has the authority to reevaluate, modify, or abrogate judicially created doctrines. *See Lubbock Cty.*, 80 S.W.3d at 585.

"If a precedent of [the supreme court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to [the supreme court] the prerogative of overruling its own decisions." *ETC Mktg., Ltd. v. Harris Cty. Appraisal Dist.*, 528 S.W.3d 70, 77–78 (Tex. 2017) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 1921–22 (1989)); *see Robinson*, 590 S.W.3d at 528 n.46 (same); *State Farm Mut. Auto. Ins.*, 553 S.W.3d at 561 (same).

The line of precedent represented by *Arnold*, as modified by *Murray*, directly controls our accrual and ripening analysis in this proceeding. State Farm argues that the line of precedent represented by *Brainard* forecloses the accrual or ripening of any common law or statutory extracontractual liability cause of action because its duty to pay Mentzer's UIM claim did not become reasonably clear until the county court at law rendered its judgment. Stated differently, by urging *Bryant* as persuasive authority, State Farm effectively argues it had no contractual obligation to reasonably handle or adjust Mentzer's UIM claim independent of unsuccessfully defending her direct action in the county court at law. With this we cannot agree.

Although *Bryant*'s judicial adjustment analysis flows logically from the third-party beneficiary analysis of *Sikes*, the accrual analysis of *Henson*, and the presentment analysis of *Brainard*, none of these decisions hold that the only contractual performance contemplated by the legal entitlement language of standard UM/UIM coverage is the insurer's filing of a general denial to facilitate the adjustment of a claim by judge or jury. If the supreme court truly intended such a result in *Brainard*, it did not expressly so hold.

Here, the common law bad faith cause of action alleged by Mentzer is legally indistinguishable from the factual circumstances of *Arnold*. Mentzer demanded payment of policy limits from State Farm on November 2, 2017, before filing her direct action on January 2, 2018. One year later, shortly before trial, and contrary to its general denial, State Farm stipulated that Mentzer was insured under its policy for up to $30,000 in UIM benefits at the time of the underlying motor vehicle accident, that the vehicle

driven by Rodriguez was an "underinsured motorist vehicle" at the time of the accident, that the automobile liability insurer for Rodriguez had tendered its policy limits of $50,055, and that Mentzer incurred $24,909.60 in past medical expenses and $6,631.20 in past lost wages as a result of the accident.

Critically, by stipulating to the underinsured status of the Rodriguez vehicle, State Farm agreed that Mentzer's covered damages exceeded Rodriguez's insurer's liability limits of $50,055. And although the stipulations did not include the negligence of Rodriguez, State Farm apparently so stipulated—again, contrary to its general denial—because the only issue submitted to the jury was the amount of Mentzer's non-economic damages. So, the only apparent reason for State Farm's rejection of Mentzer's policy limits demand one year earlier was that, although her injuries justified the payment of some amount of UIM benefits, that amount was not $30,000. And the jury's verdict of over $100,000 more in damages than the aggregate of the liability limits of the Rodriguez policy and the UIM limits of the State Farm policy does not, as a matter of law, raise even a fact issue concerning the reasonableness of its handling and adjustment of Mentzer's claim? To so interpret *Brainard* would be to literally read out of existence the factual circumstances that led the supreme court to adopt the common law duty of good faith and fair dealing in the first place, and to do so without any indication that *Sykes*, *Henson*, or *Brainard* considered the central holding of *Arnold*, as both modified and confirmed by *Murray*.

Indeed, none of these decisions expressly reject the central holding of *Arnold*, as modified by *Murray* and *Giles*, that an insurer breaches its duty of good faith and fair dealing by denying or delaying payment of a UM/UIM claim until *after* the rendition of a binding judgment of liability and damages when its liability was reasonably clear *before* the filing of the insured's direct action. Nor do any of the decisions of the courts of appeals made the subject of *Brainard*'s presentment analysis reconcile *Brainard* with *Arnold*, as modified by *Murray*. Finally, these decisions fail to address or resolve the jurisdictional conundrum that sees the contract cause of action accrue before the filing of the direct action for limitations purposes per *Murray*, 800 S.W.2d at 829 ("Limitations on a first party claim appropriately begins to run at denial, not the date the separate suit to determine coverage under the contract is resolved."), but accrue only after the rendition of a binding judgment in the same direct action for purposes of presentment per *Brainard*, 216 S.W.3d at 818 ("[T]he UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist.").

Because the district court was bound by the doctrine of stare decisis to follow *Arnold* and *Murray* under these circumstances, we hold that it did not abuse its discretion in following this line of precedent in entering an order compelling responses to Mentzer's written discovery.

## V. Conclusion

Absent any abuse of discretion on the part of the district court, we deny the mandamus relief requested by State Farm's petition.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  November 19, 2020